25703, 25704. BARRESI et al. v. BROWNE, President of Clarke County Board of Education, et al.; and vice versa.

Undercofler, Justice. This litigation involves the Clarke County Board of Education's pupil assignment plan for elementary schools for the 1969-70 school year. Appellants, white and Negro parents of elementary school children, contend that it should be enjoined as unconstitutional under the

equal protection clause of the Fourteenth Amendment to the United States Constitution.

The main appeal is from the trial court's denial of the injunction. The cross appeal is from (1) the trial court's order restraining the board from serving free breakfasts under the Federal Child Nutrition Act (Pub. L. 89-642, Oct. 11, 1966, 80 Stat. 885, 42 USCA, Chapter 13A) in certain selected elementary schools unless similar breakfasts are served in all elementary schools, and (2) the trial court's order directing that a revised plan to desegregate the elementary schools be submitted by the board to the court before June 1, 1970.

The evidence shows: In 1968 the United States Department of Health, Education and Welfare notified the Clarke County Board of Education that a new plan for school desegregation would be required for the 1969-70 school year. On June 30, 1969, "H.E.W." notified the board that the plan submitted "is not considered adequate to meet the requirements of Title IV of the Civil Rights Act of 1964." Pub. L. 88-352, Title IV, § 401, July 2, 1964; 78 Stat. 246; 42 USCA § 2000c. Thereafter, on July 30, 1969, the board adopted the elementary school desegregation plan under attack here. In formulating the plan the board first determined that all thirteen elementary schools in Clarke County except two would be assigned a minimum of 20% and a maximum of 40% Negro pupils. This conformed to the racial balance of elementary pupils in Clarke County which is approximately two-thirds white and one-third Negro. The two schools excepted were inner city schools with predominately Negro enrollments. The racial balance at these two schools was established at 50% white and 50% Negro. There is some evidence that the exceptions were made to satisfy the desire of certain Negro citizens to maintain more racial identity in these particular schools. Under this criterion an elementary school zone was established for each of the thirteen elementary schools. Pupils living over one and one-half miles from the school to which they are assigned are "bussed."

The evidence shows the boundaries of the school zones were established solely to achieve the predetermined racial balance. However, despite an extensive rearrangement of the school zones, the 20%-40% Negro racial balance in enrollment could not be attained in all of the schools with pupils residing in such established zones. Therefore, five "pockets"

of Negro pupils residing in four school zones were arbitrarily assigned to schools in other zones. The pupils in four "pockets" were "bussed" to these other schools although previously they had walked to schools located in their residential zones. Some of the pupils in the fifth "pocket" were required to walk to their assigned school since it was within one and one-half miles of their residences. The children of the Negro appellants in the instant case fell into this latter group. Prior to the 1969-70 plan they had attended a school located within two blocks of their homes. Now they are required to walk about one and one-half miles to a school outside their residential school zone. Furthermore, they had been furnished breakfast at their previous school under the Federal Child Nutrition Act. This program is not carried on at their present school and now they do not receive breakfast at school. The "pockets" of Negro pupils were transferred from predominately Negro schools and were assigned to predominately white schools to achieve the board's predetermined racial balance there. Because these schools were at maximum enrollment, this excluded certain white children from the predominately white schools and at the same time, made room for white pupils in the predominately Negro schools so that the predetermined racial balance could also be achieved there. The children of the white appellants are so assigned and although attending school in the zone established for their residences, they are "bussed" to schools located much further from their residences than other schools previously attended. *Held:*

1. This court has held that the assignment of pupils for public educational purposes is a matter for local determination. *Keever v. Board of Educ. of Gwinnett County,* 188 Ga. 299 (2) (3 SE2d 886). In our opinion the myriad of local problems and their complexity including individual pupil diversity makes it impossible for a court to establish standards which can be applied uniformly. See in this connection, *Warren v. Davidson,* 218 Ga. 25 (126 SE2d 221), and the cases there cited. Nevertheless, constitutional requirements must be observed.

Since 1954 the United States Supreme Court has ruled consistently that the operation of a dual public school system, that is, one for the white race and one for the Negro race is unconstitutional. Brown v. Board of Education, 347 U. S.

483 (74 SC 686, 98 LE 873). It has struck down as violative of the equal protection of the laws clause of the Fourteenth Amendment State laws, regulations and orders directing separate schools for the races. Cooper v. Aaron, 358 U. S. 1 (78 SC 1401, 3 LE2d 5). It has declared that the maintenance of a dual system of public schools by indirection is not permissible under our Federal Constitution. Green v. School Board of New Kent County, 391 U. S. 430 (88 SC 1689, 20 LE2d 716). It is clear that segregation of the races in public school systems by any form of compulsion is unconstitutional. Alexander v. Holmes County Board of Education, 396 U. S. 19 (90 SC 29, 24 LE2d 19). However, in our view, the United States Supreme Court has not declared that compulsory integration of the races in public school systems is demanded. See Green v. School Board of New Kent County, supra, at page 437. As it was stated in Green, the question is whether a "racially non-discriminatory" school system has been achieved.

Thus, the United States Supreme Court has condemned the practice of denying Negro children admission to public school facilities available to white children similarly situated as a denial of the equal protection of the laws. The complaint here is that white and Negro children were denied admission to public school facilities available to other white and Negro children similarly situated. In all logic it must be condemned also. As it was stated in Alexander v. Board of Education, supra, "no person is to be effectively excluded from any school because of race or color." The evidence here shows that the appellants' children are "effectively excluded" from attending a school because of their race. They are treated differently than other students similarly situated and are denied equal protection of the laws.

Nor can it be argued that "effective inclusion" because of race is different from "effective exclusion" because of race. Within the proscription of the Fourteenth Amendment, we see no difference. One is just as discriminatory as the other. The Clarke County Board of Education has attempted to achieve a predetermined racial balance in its elementary schools by treating students differently because of their race. This neither squares with the Fourteenth Amendment nor its interpretation by the United States Supreme Court holding that "racial discrimination" is unconstitutional.

The trial court erred in not enjoining the Clarke County School Board's pupil assignment plan for elementary schools for the 1969-70 school year.

2. The Federal Civil Rights Act of 1964 (Pub. L. 88-352, Title IV, § 401; 78 Stat. 246, 42 USCA, Chapter 21) requires the same conclusion as that reached in Division 1 of this opinion. Subchapter IV thereof, entitled "Public Education" (42 USCA § 2000c) provides: "As used in this subchapter. . . (b) 'Desegregation' means the assignment of students to public schools and within such schools without regard to their race, color, religion, or national origin, but 'desegregation' shall not mean the assignment of students to public schools in order to overcome racial imbalance." Section 2000c, 6(a), thereof further provides: " . . . that nothing herein shall empower any official or court of the United States to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance, or otherwise enlarge the existing power of the court to insure compliance with constitutional standards. . ."

3. The Child Nutrition Act is an existing Federal statute adopted by the United States Congress. The evidence shows that the Clarke County Board of Education is complying with the statute. Therefore, the trial court erred in enjoining the defendants from serving breakfast under this statute at any elementary school operated by them unless similar breakfasts are served or offered to be served at all of the elementary schools operated by the defendants.

4. The issue in this case is whether or not the 1969-70 school desegregation plan of the Clarke County Board of Education is valid. The trial court should not have required the board to submit a revised desegregation plan to the court by June 1, 1970. Any such proposed plan may or may not be attacked in some future litigation and any action thereon by the trial court would be in the category of an advisory opinion. *Bagby v. Bowen*, 180 Ga. 214 (2) (178 SE 439); *O'Neal v. Town of Whigham*, 206 Ga. 511, 513 (57 SE2d 591); *Harden v. Orr*, 219 Ga. 54 (2) (131 SE2d 545); *Trainer v. City of Covington*, 118 Ga. App. 424 (164 SE2d 328); Toombs v. Fortson, 277 FSupp. 821.

5. The enumeration of error of the appellants complaining of the dismissal of Civil Action No. 20455, Petition for Review under the Administrative Procedure Act, is treated as abandoned.
6. For the reasons given in the foregoing divisions, the judgment of the trial court is

*Reversed in part; affirmed in part on the main appeal. Reversed on the cross appeal. All the Justices concur.*

ARGUED MARCH 11, 1970—DECIDED JUNE 15, 1970.

*Heard & Leverett, E. Freeman Leverett,* for appellants.

*Erwin, Epting, Gibson & Chilivis, Eugene A. Epting, J. Lee Perry, Assistant Attorney General,* for appellees.