# McDANIEL, SUPERINTENDENT OF SCHOOLS, ET AL. *v.* BARRESI ET AL.

No. 420. Argued October 13, 1970—Decided April 20, 1971

BURGER, C. J., delivered the opinion for a unanimous Court.

*Eugene A. Epting* argued the cause and filed a brief for petitioners.

*E. Freeman Leverett* argued the cause and filed a brief for respondents.

Briefs of *amici curiae* were filed by *Solicitor General Griswold* and *Assistant Attorney General Leonard* for the United States, and by *Arthur K. Bolton,* Attorney General, *Harold N. Hill, Jr.,* Executive Assistant Attorney General, and *Alfred L. Evans, Jr.,* and *J. Lee Perry,* Assistant Attorneys General, for the State of Georgia.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari in this case to review a state court order enjoining the operation of a school desegregation plan. The action was brought in the Superior Court of Clarke County, Georgia, by parents of children attending public elementary schools in that county. Named as defendants were the Superintendent of Education and members of the Clarke County Board of Education. The trial court denied respondents' request for an injunction, but on appeal the Supreme Court of Georgia reversed, 226 Ga. 456, 175 S. E. 2d 649 (1970). This Court then granted certiorari, 400 U. S. 804 (1970).

Beginning in 1963, the Clarke County Board of Education began a voluntary program to desegregate its public schools. The student-assignment plan presently at issue, involving only elementary schools, has been in effect since the start of the 1969 academic year. The plan, adopted by the Board of Education and approved by the Department of Health, Education, and Welfare,[1] relies primarily upon geographic attendance zones drawn to achieve greater racial balance. Additionally, the pupils in five heavily Negro "pockets" either walk or are transported by bus to schools located in other attendance zones.[2] As a consequence the Negro enrollment of each

---

[1] It may well be that the Board of Education adopted the present student-assignment plan because of urgings of federal officials and fear of losing federal financial assistance. The state trial court, however, made no findings on these matters. No federal officials are parties in this case.

[2] Where the distance between the student's residence and his assigned school is more than 1½ miles, free transportation is provided. There is no challenge here to the feasibility of the transportation provisions of the plan. The annual transportation expenses of the present plan are reported in the record to be $11,070 less than the school system spent on transportation during the 1968–1969 school year under dual operation.

elementary school in the system varies generally between 20% and 40%, although two schools have a 50% Negro enrollment. The white-Negro ratio of elementary pupils in the system is approximately two to one.

Respondents contend in this action that the board's desegregation plan violates the Fourteenth Amendment of the Federal Constitution and Title IV of the Civil Rights Act of 1964. The Supreme Court of Georgia upheld both contentions, concluding first that the plan violated the Equal Protection Clause "by treating students differently because of their race." The court concluded also that Title IV prohibited the board from "requiring the transportation of pupils or students from one school to another . . . in order to achieve such racial balance . . . ." We reject these contentions.

The Clarke County Board of Education, as part of its affirmative duty to disestablish the dual school system, properly took into account the race of its elementary school children in drawing attendance lines. To have done otherwise would have severely hampered the board's ability to deal effectively with the task at hand. School boards that operated dual school systems are "clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." *Green* v. *County School Board,* 391 U. S. 430, 437–438 (1968). In this remedial process, steps will almost invariably require that students be assigned "differently because of their race." See *Swann* v. *Charlotte-Mecklenburg Board of Education, ante,* p. 1; *Youngblood* v. *Board of Public Instruction,* 430 F. 2d 625, 630 (CA5 1970). Any other approach would freeze the status quo that is the very target of all desegregation processes.

Nor is the board's plan barred by Title IV of the Civil Rights Act of 1964. The sections relied upon by respondents (42 U. S. C. §§ 2000c (b), 2000c–6) are di-

rected only at federal officials and are designed simply to foreclose any interpretation of the Act as expanding the powers of federal officials to enforce the Equal Protection Clause. *Swann, supra,* at 17. Title IV clearly does not restrict state school authorities in the exercise of their discretionary powers to assign students within their school systems.

*Reversed.*