**Deborah A. NORTHCROSS et al.,
Plaintiffs-Appellants,**

v.

**BOARD OF EDUCATION OF the MEMPHIS CITY SCHOOLS, Defendant-
Appellee.**

**No. 71–1174.**

United States Court of Appeals,
Sixth Circuit.

June 7, 1971.

Louis R. Lucas, William E. Caldwell, Ratner, Sugarmon & Lucas, Memphis, Tenn., Jack Greenberg, Norman Chachkin, New York City, for appellants.

Jack Petree, Evans, Petree, Cobb & Edwards, Memphis, Tenn., for appellee.

Before WEICK and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

On Petition for Rehearing

WEICK, Circuit Judge.

A majority of the active Judges of this Court having voted against a rehearing in banc, the petition for rehearing is properly before the panel for consideration and determination. Judges Edwards and McCree voted in favor of a rehearing in banc.

Subsequent to our decision herein, the Supreme Court has handed down opinions in Swann, McDaniel, Davis, Moore and North Carolina State Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554; 402 U.S. 39, 91 S.Ct. 1287, 28 L.Ed.2d 582; 402 U.S. 33, 91 S.Ct. 1289, 28 L.Ed.2d 577; 402 U.S. 47, 91 S.Ct. 1292, 28 L.Ed.2d 590; 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586, which opinions contain guidelines for the desegregation of state-imposed segregated public school systems.

We had under advisement at the time the appeals in Northcross v. Board of Education of Memphis City Schools, cases numbers 20,533 and 20,539, and we have decided in an opinion filed concurrently herewith, that said cases be remanded to the District Court for the adoption of a new plan of desegregation following the guidelines of the Supreme Court opinions.

The location of new schools always presents a difficult problem for Boards

of Education to decide, initially, and for the Federal Courts to review on constitutional grounds. Many factors are to be taken into account, which were enumerated in *Swann*.

In *Swann*, Mr. Chief Justice Burger, who wrote the unanimous opinion for the Supreme Court in all five cases, stated:

> "The construction of new schools and the closing of old ones is one of the most important functions of local school authorities and also one of the most complex. They must decide questions of location and capacity in light of population growth, finances, land values, site availability, through an almost endless list of factors to be considered. The result of this will be a decision which, when combined with one technique or another of student assignment, will determine the racial composition of the student body in each school in the system. Over the long run, the consequences of the choices will be far reaching. People gravitate toward school facilities, just as schools are located in response to the needs of people. The location of schools may thus influence the patterns of residential development of a metropolitan area and have important impact on composition of inner city neighborhoods.

> "In the past, choices in this respect have been used as a potent weapon for creating or maintaining a state-segregated school system. In addition to the classic pattern of building schools specifically intended for Negro or white students, school authorities have sometimes, since *Brown*, [Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed.2d 873] close schools which appeared likely to become racially mixed through changes in neighborhood residential patterns. This was sometimes accompanied by building new schools in the areas of white suburban expansion farthest from Negro population centers in order to maintain the separation of the races with a minimum departure from the formal principles of "neighborhood zoning." Such a policy does more than simply influence the short-run composition of the student body of a new school. It may well promote segregated residential patterns which, when combined with "neighborhood zoning," further lock the school system into the mold of separation of the races. Upon a proper showing a district court may consider this in fashioning a remedy.

> "In ascertaining the existence of legally imposed school segregation, the existence of a pattern of school construction and abandonment is thus a factor of great weight. In devising remedies where legally imposed segregation has been established, it is the responsibility of local authorities and district courts to see to it that future school construction and abandonment is not used and does not serve to perpetuate or re-establish the dual system. When necessary, district courts should retain jurisdiction to assure that these responsibilities are carried out. Cf. United States v. Board of Public Instruction, 395 F.2d 66 (CA5 1968); Brewer v. School Board [of Norfolk, Va.], 397 F.2d 37 (CA4 1968)."

Here, plaintiff's complaint is that the two new schools are being located, not too far from, but too close to the neighborhood where Negroes are living, and claim that this will perpetuate segregation.

In our per curiam opinion on the merits, we pointed out the fact that the construction of the first new school building directly across the street from the old Geeter School was to replace existing substandard country school buildings which were overcrowded, contained portable classrooms, and were in a state of disrepair. Geeter School is located in an area where two Federal Housing rent-subsidy units are being constructed and which, when completed, will "inundate" the school.

The second school building is to be located between Fairley and Lakeview Schools. Fairley has twice as many white pupils as Negro children; Lakeview has only nine white children and 462 Negro pupils. Location of the new school between the two schools will permit zone lines to be drawn which will result in desegregation of Lakeview and integration of the three schools. The neighborhood is also integrating.

The new schools are badly needed now. Prolonged litigation over their location will not solve the shortage nor relieve the situation which the Memphis School Board inherited by annexation from Shelby County.

Upon consideration of a new plan, the District Judge may adopt further means for desegregation, such as zoning, pairing, grouping, contiguous and non-contiguous zones, and transportation. He recognized the probability of doing this to correct racial imbalance.

Applying the standards of *Swann*, we cannot say that the District Judge abused his discretion in denying the application for injunction.

The petition for rehearing is denied.