**The STATE OF GEORGIA et al.,**
**Appellants,**

v.

**The Honorable John N. MITCHELL,**
**Attorney General of the United**
**States, et al.**

**No. 24423.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1970.

Decided July 22, 1971.

Messrs. J. Lee Perry and Alfred L. Evans, Jr., Atlanta, Ga., for appellants.

Mr. Joseph B. Scott, Atty., Department of Justice, of the bar of the Supreme Court of California, pro hac vice, by special leave of Court, with whom Mr. Thomas A. Flannery, U. S. Atty., was on the brief, for appellees. Mr. John A. Terry, Asst. U. S. Atty., also entered an appearance for appellees.

Before TAMM and ROBB, Circuit Judges, and GORDON,* District Judge, U. S. District Court for the Eastern District of Wisconsin.

MYRON L. GORDON, District Judge.

The district court dismissed the plaintiffs' complaint finding (among other grounds) that it failed to state a claim upon which relief could be granted, and this appeal followed. The complaint contains two separate counts.

The plaintiffs are the state of Georgia, its governor, its state board of education, its state superintendent of schools, and several parents. In their first cause of action, the plaintiffs complain that the defendants, the attorney general of the United States, and the secretary of the United States Department of Health, Education and Welfare have deprived the plaintiffs of their rights of due process, under the fifth amendment, and of their rights to equal protection of the laws, under the 14th amendment by pursuing certain policies and practices in connection with the enforcement of school desegregation.

In their second cause of action, it is alleged that the defendants have selectively discriminated against these plaintiffs by ignoring certain blatant conditions of school segregation in other geographical areas while pressing for compliance in the southern states. The plaintiffs claim that this "lopsided imposition of racial exclusions and quotas upon Southern children, parents, teachers and school districts alone" deprives the plaintiffs of their constitutional and statutory rights.

## COLLATERAL ATTACK

As a threshold defense, the defendants urge that the plaintiffs' action constitutes an impermissible collateral attack on the judgment of the court in United States v. State of Georgia et al. (N.D. Ga., No. 12972, decided December 17, 1969). There the district court enjoined the Georgia state board of education from disbursing public funds to those school districts which failed to establish that they had adopted satisfactory school desegregation plans. The decision of the northern district court of Georgia does not appear to have been published. The defendants in the instant case assert in their brief (at p. 8) that no appeal was taken by the defendants from that judgment, and that statement has not been contradicted by the plaintiffs. See, however, United States v. State of Georgia, 428 F.2d 377, 379 (5th Cir. 1970).

The plaintiffs maintain that the collateral attack rule does not apply in the case at bar because the parties here are not the same as those who were before the court in United States v. Georgia. In that case, the United States was a named party; in the instant case, the attorney general and the secretary of the Department of Health, Education and Welfare are parties. In addition, some of the plaintiffs in the present case were not before the court when it decided United States v. Georgia. It is surely arguable, however, that the same basic interests are amply represented in both cases, and that the technical variance in the identity of the parties is a matter of form, rather than of substance. It is also probable that the same essential issues which are raised in this case were implicit in United States v. Georgia.

In further support of their view that the collateral attack doctrine is inapplicable, the plaintiffs contend that the court's order in United States v. Georgia was void since it violated the United States Constitution. While the Georgia parties may have been entitled to appeal

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

the decision of the federal court for the northern district of Georgia, we have no doubt that the latter court had jurisdiction; thus, the rule stated by the Supreme Court in Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 325, 47 S.Ct. 600, 604, 71 L.Ed. 1069 (1927), would appear to be applicable:

> "A judgment merely voidable because based on an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause."

In its order of May 5, 1970, the district court concluded that portions of the complaint constituted a collateral attack upon the earlier judgment; nevertheless, we have determined that we should advert to the merits of the issues raised upon this appeal rather than to sustain the arguably correct defense of collateral attack.

## THE FIRST COUNT

█ The thrust of count I of the complaint is the plaintiffs' contention that the defendants, as executives of the United States, are unconstitutionally and illegally imposing racial restraints upon pupils and teachers in Georgia's public schools.

In paragraph 19 of the first count of their complaint, the plaintiffs further particularize their claim averring that

> " * * * the policy, practice and actions of defendants in attempting to impose a racial quota system upon the faculty and pupils of the public schools of Georgia, would require the State of Georgia and its local school systems to violate rights secured to the parents, pupils and faculty of such public schools under the Fourteenth Amendment by converting the constitutional 'right' of such citizens *not* to be excluded from or assigned to a school solely on the basis of race, color or national origin (with the correlative 'duty' of the State and its institutions and instrumentalities to afford such 'right' to the pupils and faculty), into

a constitutional 'duty' to attend a school to which they have been assigned solely on the basis of race. * * *"

The flaw in the plaintiffs' analysis is fatal: the sins of which they complain are, in fact, entirely lawful acts on the part of federal officers which have been fashioned and consistently confirmed by the United States Supreme Court. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); McDaniel v. Barresi, 402 U.S. 39, 91 S.Ct. 1287, 28 L.Ed.2d 582 (1971); Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955).

Ever since Brown v. Board of Education, 347 U.S. 483, 75 S.Ct. 753, 99 L.Ed. 1083 (1954), the courts have been attempting to apply the constitutional principles which were announced in that case. For this court to find a valid cause of action in count I of the plaintiffs' complaint, we would be obliged to ignore or circumvent the unequivocal expressions and mandates of the Supreme Court.

Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), imposes a duty to eliminate discrimination which forecloses our entertaining the issues presented in count I of this complaint. State-sponsored dualism in "every facet of school operations" was condemned in *Green*, where, at page 435, 88 S.Ct. at page 1693, the court said:

> "It was such dual systems that 14 years ago *Brown I* held unconstitutional and a year later *Brown II* held must be abolished; school boards operating such school systems were *required* by *Brown II* 'to effectuate a transition to a racially nondiscriminatory school system.' 349 U.S., at 301, 75 S.Ct. 753."

We also believe that the recent rulings of the United States Supreme Court in *Swann* and *McDaniel* have demolished any plausible merit to the present com-

plaint. If there was any doubt of the constitutional duty to eliminate state-created racially separate public schools, that doubt was dissipated in *Swann* and *McDaniel*.

■ The plaintiffs may no longer be heard to suggest that the federal hand must be stayed because there is a "freedom of choice" inherent in the citizenry. That argument loses its principal cogency when viewed in the context of *Green,* supra, which severely restricted the freedom of choice concept as an escape hatch in connection with the duty to disestablish dual school systems. Freedom of choice is a technique which may be employed only if it provides a method of abolishing segregation. It is not a "sacred talisman" or "an end in itself." *Green,* p. 440, 88 S.Ct. 1689.

The plaintiffs have urged that the defendants' practices violate the specific provisions of the Civil Rights Act of 1964. Particularly, they point to 42 U.S.C. §§ 2000c and 2000c-6. The former section provides in part as follows:

" 'Desegregation' means the assignment of students to public schools and within such schools without regard to their race, color, religion, or national origin, but 'desegregation' shall not mean the assignment of students to public schools in order to overcome racial imbalance."

Section 2000c-6 authorizes the attorney general to commence actions and goes on to provide:

"nothing herein shall empower any official or court of the United States to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance, or otherwise enlarge the existing power of the court to insure compliance with constitutional standards."

In *Swann,* the court considered the argument that "the equity powers of federal district courts had been limited" by the aforesaid sections of the Civil Rights

Act of 1964. The court rejected the argument and concluded (402 U.S. at 17, 91 S.Ct. at 1277) :

"On their face, the sections quoted purport only to insure that the provisions of Title IV of the Civil Rights Act of 1964 will not be read as granting new powers. The proviso in § 2000c-6 is in terms designed to foreclose any interpretation of the Act as expanding the *existing* powers of federal courts to enforce the Equal Protection Clause. There is no suggestion of an intention to restrict those powers or withdraw from courts their historic equitable remedial powers."

McDaniel v. Barresi also negates the plaintiffs' argument that their rights under the 14th amendment are abridged by the defendants' enforcement of federal policies regarding school desegregation. At 402 U.S. p. 41, 91 S.Ct. p. 1288, the Supreme Court said:

"Respondents contend in this action that the board's desegregation plan violates the Fourteenth Amendment of the Federal Constitution and Title IV of the Civil Rights Act of 1964. The Supreme Court of Georgia upheld both contentions, concluding first that the plan violated the Equal Protection Clause 'by treating students differently because of their race.' The court concluded also that Title IV prohibited the board from 'requiring the transportation of pupils or students from one school to another * * * in order to achieve such racial balance. * * *' We reject these contentions."

■ Thus, it follows that the Department of Health, Education and Welfare was justified in utilizing the provisions of 42 U.S.C. § 2000d-1, which authorizes the termination of federal assistance in a state which once sponsored or aided racial discrimination in its schools and has failed to take affirmative steps to cure the impact of its past policies.

## THE SECOND COUNT

The second count of the complaint avers that significant racial imbalance

exists in the school systems of several non-southern states, and that the defendants have not taken steps to correct this, but instead, have discriminatorily pursued legal and administrative sanctions in southern states. The complaint points out that a high degree of racial segregation exists in such non-southern communities as Cincinnati, Chicago, Cleveland, Milwaukee, and Detroit.

In paragraph 26 of their complaint, the plaintiffs assert:

"Since 1967, defendants and their predecessors in office, while engaged in the above described activities to compel racial balance in Georgia and other southern states, have, with but a few isolated exceptions, steadfastly refused to take similar action respecting the far greater degree of racial isolation, separation and segregation of non-southern school systems."

The attorney general is given discretion with regard to enforcement in 42 U.S.C. 2000c–6(a), which provides in part that the attorney general may sue in the district court if he receives a complaint and

" * * * believes the complaint is meritorious and certifies that the signer or signers of such complaint are unable, in his judgment, to initiate and maintain appropriate legal proceedings for relief and that the institution of an action will materially further the orderly achievement of desegregation in public education, * * * "

This legislative grant of discretion to the attorney general meets constitutional requirements. See United States v. Cox, 342 F.2d 167, 171 (5th Cir. 1965), cert. denied 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). Judicial review of an attorney general's discretionary conduct under a constitutional delegation is narrowly restricted. See Peek v. Mitchell, 419 F.2d 575 (6th Cir. 1970), and

Newman v. United States, 127 U.S.App. D.C. 263, 382 F.2d 479 (1967).

We have carefully examined the complaint in this case and find no basis therein for believing that judicial review is appropriate in this case. Cf. Social Security Board v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 90 L.Ed. 718 (1945); Yick Wo v. Hopkins, 118 U.S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Even though the plaintiffs have forcefully pointed to the existence of school segregation in northern cities, their complaint nowhere alleges that such condition is the result of state action. Charges of discriminatory enforcement by the attorney general omit any claim that such segregation in non-southern communities results from state-imposed practices. In our opinion, the defendants may not be charged with selective or discriminatory enforcement because they have prosecuted de jure segregation in Georgia without simultaneously challenging de facto segregation elsewhere.

We would have an entirely different issue before us if the complaint charged that the attorney general had systematically failed to take steps to eliminate state-created segregation in northern states at the same time that he prosecuted the same condition in southern states.

The distinction between de facto and de jure segregation disposes of the plaintiffs' contention that they were the victims of discriminatory prosecution; the import of this distinction becomes especially clear upon examining the Supreme Court's recent decision in *Swann*. It is abundantly clear from such decision that the Court was addressing itself to racial practices established "by state action."

In our opinion, the district court properly dismissed the plaintiffs' cause of action. The order appealed from is affirmed.