Shirley **DARVILLE** et al., **Individually, and as next friend, etc. of their respective minor children, etc., and the City of Hialeah, etc.**

v.

**DADE COUNTY SCHOOL BOARD** et al.

**No. 72-1451-Civ-CA.**

United States District Court,
S. D. Florida,
Miami Division.

Dec. 28, 1972.

Philip Carlton, Jr., Miami, Fla., for plaintiffs.

Frank A. Howard, Jr., Miami, Fla., for School Board.

ATKINS, District Judge.

This cause is before the Court on defendants' motion to dismiss, following a hearing on said motion and submission of supplemental memoranda requested by the Court. It presents the important question of the effect of the Education Amendments of 1972, Public Law 92–318, and especially § 806 thereof, on school board implemented, but non-court-ordered, transportation of students to maintain racial balance and to prevent reversion to a dual school system, although the school system has already attained unitary status.

The Dade County school system was, in a case previously before this court, found to be unitary. This finding was affirmed by the Court of Appeals. Pate v. Dade County School Board, 447 F.2d 150 (5th Cir. 1971), cert. denied, 405 U. S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972). At that point, of course, the school board and the court were subject to the so-called "second stage" guidelines

set forth in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 31–32, 91 S.Ct. 1267, 1284, 28 L.Ed.2d 554 (1971). As the Supreme Court noted there, once unitary status has been achieved:

> Neither school authorities nor district courts are constitutionally required to make year-by-year adjustments of the racial composition of student bodies once the affirmative duty to desegregate has been accomplished and racial discrimination through official action is eliminated from the system.

In the case *sub judice*, plaintiffs contend that such adjustments by school authorities are constitutionally and statutorily proscribed.

Plaintiffs, the parents of several Dade County school-aged children and the City of Hialeah, Florida, challenge the school board's assignment of seventh grade students to Brownsville Junior High School, a seventh grade center, when Filer Junior High School is allegedly closer to the students' homes. The grouping of Filer with Brownsville and Miami Springs Junior High School was not court-ordered, as was the initial Brownsville-Miami Springs pairing.

Plaintiffs allege that the Board's action was taken solely to overcome racial imbalance in the affected schools. They view the grouping as harmful to the children's health, safety, and education. Arguing that the defendants have violated § 806 of the Education Amendments of 1972 and the equal protection and due process clauses of the Fourteenth Amendment, plaintiffs seek, inter alia, to enjoin the challenged assignment. For purposes of the motion to dismiss, of course, plaintiffs' well-pleaded allegations must be deemed admitted and accepted as true.

■ The Court finds little merit in the plaintiffs' equal protection and due process argument. A similar contention was rejected by a unanimous Supreme Court in McDaniel v. Barresi, 402 U.S. 39, 91 S.Ct. 1287, 28 L.Ed.2d 582 (1971). In that case a state court had enjoined the operation of a school board-initiated voluntary school desegregation program. The Court reversed, holding that the board "properly took into account the race of its elementary school children in drawing attendance lines." *Id.* at 41, 91 S.Ct. at 1288. It refused to restrict, under the guise of Title IV prohibitions, "state school authorities in the exercise of their discretionary powers to assign students within their school systems." *Id.* at 42, 91 S. Ct. at 1289. *Cf.* Adams v. Evansville-Vanderburgh School Corp., Case No. 72–1413, (7th Cir. 1972), cert. denied, — U.S. —, 93 S.Ct. 558, 34 L.Ed.2d 512 (1972).

■ Plaintiffs' statutory argument, based as it is on an incorrect reading of § 806, must also be rejected. Section 806, now codified as 20 U.S.C.A. § 1656, is entitled "Prohibition against official or court orders to achieve racial balance or insure compliance with constitutional standards applicable to entire United States." It provides that:

> The proviso of section 407(a) of the Civil Rights Act of 1964 providing in substance that no court or official of the United States shall be empowered to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance, or otherwise enlarge the existing power of the court to insure compliance with constitutional standards shall apply to all public school pupils and to every public school system, public school and public school board, as defined by Title IV, under all circumstances and conditions and at all times in every State, district, territory, Commonwealth, or possession of the United States regardless of whether the residence of such public school pupils or the principal offices of such public school system, public school or public

school board is situated in the northern, eastern, western, or southern part of the United States.

As is readily apparent from a reading of the new statute, § 806 is designed to insure that a specific proviso in the Civil Rights Act of 1964 will be interpreted to cover the entire United States. That proviso, to 42 U.S.C. § 2000c–6(a)(2), states that nothing therein "shall empower any official or court of the United States to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance. . . ." The 1972 amendment extends the 1964 proviso's ban on certain types of court orders to all school- systems, wherever situated. A survey of its legislative history supports the conclusion that § 806 has no broader meaning. See, e. g., Conference Report No. 798, 1972 U.S.Code Cong. and Admin.News p. 2409.

Although the statute is quite convoluted, plaintiffs' interpretation of it is indefensible. As they construe the statute, public school pupils, public school systems, public schools, and public school boards are now, as courts and officials have been since 1964, subject to the restrictions of the proviso. This implies that the former, public school pupils included, have the authority to require transportation of students. The fallacy in that reading of § 806 is readily apparent.

Properly interpreted, § 806 simply reiterates, albeit geographically, the proviso's caution against court-ordered transportation of students to achieve racial balance. The proviso, as originally written and as bolstered by § 806, does not preclude certain types of transportation of public school pupils. Most importantly, the proviso is still inapplicable even to court-ordered busing "where the purpose is not racial balance—where the purpose is, for example, to end state-imposed segregation or its vestiges." Harvest v. Board of Public Instruction of Manatee County, 312 F.Supp. 269, 273 (M.D.Fla.1970).

Secondly, the proviso contains no restrictions on school board action and, as discussed supra, none can be read into the 1972 amendments. See McDaniel v. Barresi, 402 U.S. 39, 91 S.Ct. 1287, 28 L.Ed.2d 582 (1971). Where Congress chose to impose restrictions on school board-initiated transportation of students, it expressed itself clearly, as in § 802 of the Education Amendments. The § 802(a) prohibition against use of appropriated funds for transportation of students in order to overcome racial imbalance or to carry out a plan of racial desegregation is an explicit congressional threat to school systems and school boards.

Since Congress has not, in § 806, attempted to proscribe school board-initiated plans for the transportation of students, that section provides no basis for upsetting the assignment of students to Brownsville. This is true even when it is assumed, as it must be on this motion to dismiss, that the inclusion of Filer in the Brownsville-Miami Springs pairing was ordered to achieve racial balance and to further a goal of desegregation.

Accordingly, after consideration of the record and the arguments of counsel, and with the teachings of Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505 (5th Cir. 1971), firmly in mind, it is ordered and adjudged that defendants' motion to dismiss for failure to state a claim is granted.