Shirley DARVILLE, Gloria Harding, Katie Delehanty, Individually, etc., et al., Plaintiffs-Appellants,

v.

DADE COUNTY SCHOOL BOARD, as an agency and subdivision of the State System of Public Education, et al., etc., Defendants-Appellees.

No. 73–1519.

United States Court of Appeals, Fifth Circuit.

July 10, 1974.

 

Rex Ryland, Jr., Philip Carlton, Jr., Miami, Fla., for plaintiffs-appellants.

Frank A. Howard, Jr., Thomas G. Spicer, Miami, Fla., for defendants-appellees.

Before BROWN, Chief Judge, and RONEY and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This appeal presents the question of whether a school board, once a unitary school system is attained, may initiate pupil assignment plans requiring transportation to ensure the continued existence of the unitary system. The appellants, parents of school age children being assigned and the city of Hialeah, Florida, challenge a plan proposed by the Dade County School Board which was not court ordered and in fact went beyond the requirements of this Court's mandates. Specifically, the appellants allege that the school board's actions in attempting to fully implement and retain a unitary school system violate Title VIII of the Education Amendments of 1972 (20 U.S.C.A. §§ 1651–1656).[1] The District Court concluded that the school board was acting within its authority and dismissed the plaintiff's complaint. We affirm.

## Evolution Of a Unitary School System

The Dade County School Board was under a District Court order to effectuate fully a unitary school system in the 1970–71 school year. In review of the District Court's desegregation plan prior to its implementation, this Court ordered certain modifications,[2] among them being the grouping of predominantly black Brownsville Junior High School with Miami Springs Junior High School. The District Court plan would have allowed Brownsville to remain segregated, a result not tolerated by this Court. One year after implementing the new desegregation guidelines, the Dade County School District was again reviewed by this Court and was pronounced to have achieved a unitary status.[3]

It was for the 1972–73 school year that the school board, upon its own initiative, ordered the grouping of predominantly white Filer Junior High School with the Brownsville and Miami Springs schools.[4] It was this action on the part of the school board which precipitated the lawsuit by the parents of Filer students and by the city of Hialeah, a community served by Filer Junior High School.

1. The complaint was originally filed in state court challenging Title VIII, § 806 (20 U.S.C.A. § 1656) and alleging a deprivation of equal protection and due process rights. The school board petitioned for removal under 28 U.S.C.A. §§ 1441 and 1443 noting jurisdiction under 28 U.S.C.A. § 1343(3) and 42 U.S.C.A. § 1983. The appellants did not file a motion for remand nor do they object on appeal to federal jurisdiction.

2. Determining that one of the six *Green* criteria which make up a unitary school system was missing, this Court ordered various modifications of the District Court's pupil assignment plan for the 1970–71 school year. Pate v. Dade County School Board, 5 Cir., 1970, 434 F.2d 1151, cert. denied, 1971, 402 U.S. 953, 91 S.Ct. 1613, 29 L.Ed.2d 123. The modification would have the effect of reducing the number of black students which would be attending all or virtually all-black schools from 44% to 24% of the entire black student population.

3. Following the Supreme Court decision in Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, the Dade County School District was again challenged to determine if it adhered to the *Swann* guidelines. The District Court found compliance and this Court affirmed summarily. Pate v. Dade County School Board, 5 Cir., 1971, 447 F.2d 150, cert. denied, 1972, 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794.

4. The school board's plan called for all seventh (7th) grade students of the three schools to attend Brownsville while all eighth (8th) and ninth (9th) grade students would attend Filer or Miami Springs.

In attacking the actions of the school board as arbitrary and without legal justification, the appellants raise two primary contentions: (1) that the school board's actions were in conflict with previous court-ordered plans; and (2) the school board has no authority to require transportation of students to achieve a racial balance in schools once a unitary system has been attained. We find no merit in either of these contentions.

### Implementation Of Court Mandates

■ First, we discern no conflict between the school board's actions and our previous instruction to the Dade County School Board. Our mandate to the school board in *Pate*, 434 F.2d at 1158, found the retention of Brownsville Junior High School as a virtually all-black school as proposed under the District Court's plan to be patently unacceptable. We required, at a minimum, the grouping of Brownsville with the predominantly white Miami Springs school. Nothing was said which could be interpreted as inhibiting the school board from adopting a more inclusive grouping plan in furtherance of desegregation goals.

### Application Of Title VIII

The appellant's second challenge assaults the school board's authority to impose a grouping plan among schools which requires pupil transportation after the school system has achieved unitary status. The Dade County School Board's plan of grouping Filer with Brownsville and Miami Springs was an affirmative action to promote desegregation within a unitary school system.

The Supreme Court has recognized the school board's powers in the field of pupil assignment as plenary and shall be usurped by federal courts, only if the school boards default in the exercise of their power. *Swann, supra*. The Court in *Swann* stated in unequivocal language that:

School authorities are traditionally charged with broad power to formulate and implement educational policy and might well conclude, for example, that in order to prepare students to live in a pluralistic society each school should have a prescribed ratio of Negro to white students reflecting the proportion for the district as a whole. To do this as an educational policy is within the broad discretionary powers of school authorities; absent a finding of a constitutional violation, however, that would not be within the authority of a federal court.

402 U.S. at 16.

While the Court in *Swann, supra*, absolved school boards in unitary systems from making yearly adjustments to maintain racial compositions in the schools, no admonitions were given prohibiting school boards from initiating programs proposed to ensure the continuation of racial balance.

■ Recognizing, as they must, that school boards are vested with broad discretion in pupil assignments, the appellants alternatively assert that the powers of school boards in unitary systems have been curtailed by Title VIII of the Education Amendments of 1972 (20 U.S.C.A. §§ 1651–1656).[5] But a careful reading of the Amendments and a fair reading of § 806[6] shows that a

---

5. Section 801 of the Education Amendments stipulates that:
   "No provision of this Act shall be construed to require the assignment or transportation of students or teachers in order to overcome racial imbalance."

6. Section 806 in its entirety provides:
   "The proviso of section 407(a) of the Civil Rights Act of 1964 providing in substance that no court or official of the United States shall be empowered to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance, or otherwise enlarge the existing power of the court to insure compliance with constitutional standards *shall apply to all public*

limited application was intended by Congress. As appellants read § 806 it imposes the restrictions of § 407(a) of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000c–6(a)) on actions by public school boards, a result necessarily foreclosed by McDaniel v. Barresi, 1971, 402 U.S. 39, 91 S.Ct. 1287, 28 L.Ed.2d 582.[7]

We find the appellant's reliance on § 806 as misplaced. It is an unwarranted and overbroad interpretation of § 806 that applies its prohibitory restrictions to voluntary action by local school boards. A proper reading of § 806 demonstrates that its purpose was to ensure that the prohibitions found in § 407(a)

be applied throughout the entire United States "to all public school pupils and to every public school system, public school and public school board." The provision of § 806 can only be read as applying to federal officials and agencies.[8] Any other interpretation would be inconsistent with the clear wording of the statute.

Recognizing that local school officials are not restricted by the provisions of § 806 in devising school assignment plans, they must be allowed to employ available means to implement these plans. These means include the use of transportation. The Supreme Court rec-

---

*school pupils and to every public school system, public school and public school board,* as defined by Title IV, under all circumstances and conditions and at all times in every State, district, territory, Commonwealth, or possession of the United States regardless of whether the residence of such public school pupils or the principal offices of such public school system, public school or public school board is situated in the northern, eastern, western, or southern part of the United States." (Emphasis added).

7. Prior to the enactment of Title VIII of the Education Amendments of 1972, the Supreme Court dismissed any doubt as to the applicability of § 407(a) of the Civil Rights Act of 1964 to local school boards. McDaniel v. Barresi, *supra.* The Court answered a charge similar to the one presented in this case that the local school boards were prohibited by Title IV (which includes § 407(a)) of the Civil Rights Act of 1964 from requiring busing to achieve a racial balance. The Court concluded:

Nor is the board's plan barred by Title IV of the Civil Rights Act of 1964. The sections relied upon by respondents (42 U.S.C. §§ 2000c(b), 2000c–6) are directed only at federal officials and are designed simply to foreclose any interpretation of the Act as expanding the powers of federal officials to enforce the Equal Protection Clause. *Swann, supra,* 402 U.S., at 17 [91 S.Ct., at 1276]. Title IV clearly does not restrict state school authorities in the exercise of their discretionary powers to assign students within their school systems. 402 U.S. at 41–42.

8. This interpretation is supported by the legislative history of the Act. Senate Report No. 92–604 discussed the stipulation of § 801 admonishing that no provision of the Amend-

ments were to be construed to require the assignment or transportation of pupils. This report indicates that the Act was directed at mandates from federal officials requiring transportation of pupils to achieve racial balances. The report states that, "[t]o the extent consistent with law, the Committee believes that the question of transportation should be decided at the local level." 1972 U.S.Code Cong. and Admin.News, p. 2605.

We expressly pretermit any intimation as to the validity or application of § 806 to federal courts since the matter here under review is the voluntary action of the school board, and the complaint against the federal court is not that it took action, but that it declined to take action.

This Court previously rejected a similar attack, based on the anti-busing restrictions of § 407(a) of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000c–6(a)), against the powers of federal courts to issue orders seeking to achieve a racial balance in schools by requiring the transportation of students from one school to another. In United States v. Jefferson County Bd. of Educ., 5 Cir., 1966, 372 F.2d 836, aff'd on rehearing en banc, 380 F.2d 385, cert. denied, sub nom. Caddo Parish School Bd. v. United States, 1967, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103, the Court declared that "the equitable powers of the courts exist independently of the Civil Rights Act of 1964." 372 F.2d at 880. This rejection of any limitation on the powers of federal courts to remedy unconstitutional segregation frequently has been cited approvingly by other Courts. Monroe v. Board of Comm'rs, 6 Cir., 1970, 427 F.2d 1005, 1009; Board of Educ. of Indep. School Dist. 89 v. York, 10 Cir., 1970, 429 F.2d 66, 69; Swann v. Charlotte-Mecklenburg Bd. of Educ., 4 Cir., 1970, 431 F.2d 138, 146, affirmed 1971, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, reh. denied, 403 U.S. 912, 91 S.Ct. 2200, 29 L.Ed. 2d 689.

ognized the school board's need to use transportation to carry out pupil assignment programs in North Carolina State Board of Education v. Swann, 1971, 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586. In striking down a North Carolina Anti-Busing statute the Court stated:

We likewise conclude that an absolute prohibition against transportation of students assigned on the basis of race, "or for the purpose of creating a balance or ratio," will similarly hamper the ability of local authorities to effectively remedy constitutional violations. As noted in *Swann, supra,* 402 U.S., at 29 [91 S.Ct., at 1282], bus transportation has long been an integral part of all public educational systems, and it is unlikely that a truly effective remedy could be devised without continued reliance upon it.

The actions taken by the Dade County School Board were not in violation of Title VIII nor contrary to the rulings of this Court. The District Court acted properly in dismissing the appellant's complaint.

Affirmed.