**UNITED STATES of America, Plaintiff,**

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO, Defendant.**

**Kathy Sue JOHNSON, et al., and Darcel Milton, et al., Plaintiffs,**

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO, et al., Defendants.**

**Nos. 80 C 5124, 76 C 995 and 76 C 996.**

United States District Court, N.D. Illinois, E.D.

July 14, 1983.

---

Thomas H. Morsch, Shalom Kohn, Steven Baskin, Sidley & Austin, Chicago, Ill., for Johnson and Milton plaintiffs.

C. Richard Johnson, Hugh R. McCombs, Jr., Isham, Lincoln & Beale, and Robert C. Howard, Robert C. Weissbourd, Hatunian, Futterman & Howard, Chtd., Chicago, Ill., for Board of Educ.

William Bradford Reynolds, Asst. Atty. Gen., Civ. Rights Div., Dept. of Justice, Alexander C. Ross, Washington, D.C., for the U.S.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's January 6, 1983 memorandum opinion and order in the *United States* action (the "Opinion," 554 F.Supp. 912, 928) approved the desegregation plan (the "Plan") developed by the Board of Education of the City of Chicago ("Board") "as being clearly within the 'broad range of constitutionally acceptable plans'." Final judgment (the "Judgment") upholding the Plan's constitutionality was then entered February 11. Board has now moved for judgment as a matter of law in the *Johnson* and *Milton* cases recently consolidated with the *United States* action, arguing the Opinion and Judgment are dispositive of the constitutional issues raised in *Johnson* and *Milton*. For the reasons stated in this memorandum opinion and order Board's motion is granted.

### Background

Some four years ago our Court of Appeals first dealt with the *Johnson* and *Milton* actions in *Johnson v. Board of Education,* 604 F.2d 504 (7th Cir.1979). It summarized the relevant factual background, *id.* at 507–09, footnote omitted:

These consolidated civil rights actions for declaratory judgment and injunctive relief were filed on March 15, 1976, challenging as unconstitutional a desegregation plan adopted voluntarily by the Board of Education of the City of Chicago in an effort to arrest the trend toward segregated enrollments at two Chicago public secondary schools. The challenged desegregation plan, commonly referred to as the "Student Racial Stabilization Quota Plan" ["Plan" in this quotation], established a ceiling on enrollments and imposed racial quotas with respect to admissions at Morgan Park and Gage Park High Schools. Plaintiffs-appellants in [*Johnson*] are black children and their parents residing in the Morgan Park High School attendance area. Plaintiffs-appellants in [*Milton*] are black children and their parents residing in the Gage Park High School attendance area.

Plaintiffs' complaints alleged that the Plans, as instituted at Morgan Park and Gage Park High Schools, deprived them of their rights under the Constitution and under Title 42 U.S.C. §§ 1981 and 1983, and under Title 20 U.S.C. § 1703(c) because the Plans restricted the admission of minority students to these high schools solely on the basis of race. . . .

[Board] filed answers to the complaints, denying the Plans were unconstitutional and denying plaintiffs were deprived of any rights under federal law. [Board] further alleged that plaintiffs had no constitutional right to attend Morgan Park or Gage Park High School since the Board of Education, vested by state statute with the supervision and management of the public school system of the City of Chicago, is empowered to divide the city into attendance areas and to apportion the pupils to the several schools, taking into consideration the prevention of racial segregation in the public schools. In the performance of these statutory duties, the Board contended the Plans were necessary to alleviate overcrowding and to promote integration at Morgan Park and Gage Park High Schools, both of which had experienced an accelerated change in the size and racial composition of their enrollments as a result of a concomitant demographic change in the residential neighborhoods encompassing the attendance areas of these schools.

On April 29, 1976, three days after the filing of [Board's] answer, plaintiffs in *Johnson* presented a motion for a temporary restraining order seeking to enjoin the implementation of the Plan at Morgan Park High School, which was scheduled to begin the next day with a lottery drawing to select the incoming freshman class for the fall of 1976. The district court [Will, J.] denied the motion. On August 17, 1976, after extensive discovery by means of interrogatories and document production, plaintiffs filed a motion for a preliminary injunction or in the alternative for summary judgment. On September 27, 1976, the district court denied the alternative motion for summary judgment, but deferred ruling on plaintiffs' motion for preliminary injunction, stating its preference for a modification of the Plans to include a voluntary busing program for students excluded from these two schools to attend alternative integrated high schools.

At the conclusion of discovery, entry of a final pretrial order, stipulation of additional facts and admission of exhibits into evidence, and after both parties agreed to withdraw objections, the parties rested on June 27, 1977. At that time, counsel for the Board advised the court of a pending modification of the Plans to be acted upon at the next Board meeting. The district court then stated it was prepared to find the Plans as originally adopted to be unconstitutional, but would reserve final ruling pending any modification the Board might wish to present.

On July 13, 1977, the Board adopted a modification of the Plans, which provided bus transportation to white or integrated schools from a convenient point near the residences of all students in the Gage Park and Morgan Park attendance areas who were not selected for admission to these two schools under the Plans. By an order of the district court entered August 12, 1977 the Board was directed to implement procedures for publicity and student counseling with respect to the Plans, as modified, and further, to provide that designated spaces at the alternative schools which were not filled by students excluded from one school (e.g., Gage Park) would be made available to students excluded from the other school (e.g., Morgan Park).

On December 30, 1977, the district court entered its findings of fact and conclusions of law, and granted judgment in favor of [Board]. The court held that the Plans, as modified to include bus transportation to primarily white or integrated schools for those students not admitted to Gage Park or Morgan Park High Schools, restored to plaintiffs their constitutional rights in that plaintiffs had a meaningful opportunity to attend a Chicago public

high school in an integrated setting. The court further ordered that [Board] be enjoined to continue the Plans, as modified.

In affirming the district court's order, the Court of Appeals concluded (*id.* at 518):

Accordingly, in view of the findings on the record of the existence of white flight and the compelling state interest in promoting integration, we hold that voluntary state action directed toward the prevention of *de facto* segregation in the public schools is constitutionally permissible where, as here, the racial quotas imposed in connection with the desegregation plan provide all students residing in the attendance areas with a meaningful opportunity to attend an integrated high school.

Although the Supreme Court initially granted certiorari, 448 U.S. 910, 100 S.Ct. 3055, 65 L.Ed.2d 1139 (1980), it later vacated that grant and remanded *Johnson* and *Milton* to our Court of Appeals to consider whether the actions were moot in light of (1) Board's decision to rescind the stabilization plans and (2) this Court's September 24, 1980 order approving and entering the Consent Decree (the "Decree") in the *United States* action. 449 U.S. 915, 101 S.Ct. 339, 66 L.Ed.2d 162 (1980). *See* Opinion, 554 F.Supp. at 913 n. 1. In turn our Court of Appeals remanded *Johnson* and *Milton* to this Court's colleague Judge Will, 645 F.2d 75 (7th Cir.1981).

Pending final development of the Plan, Board reinstated its stabilization plans for Morgan Park and Gage Park High Schools in April 1981. In June 1981 Judge Will accordingly found *Johnson* and *Milton* were not moot, but he again denied plaintiffs' motion for a permanent injunction against use of the challenged quotas. Our Court of Appeals (1) affirmed Judge Will's finding the cases were not moot and (2) reinstated its earlier opinion in *Johnson*. 664 F.2d 1069, 1073 (7th Cir.1981).

Once again the Supreme Court granted certiorari but then vacated and remanded in a *per curiam* opinion, 457 U.S. 52, 102 S.Ct. 2223, 72 L.Ed.2d 668 (1982). It said (*id.* at 53–54, 102 S.Ct. at 2224):

We agree with the Court of Appeals that the case is not moot and that the subsequent development [i.e., entry of the Decree] does not undermine that court's original decision upholding the racial quotas. However, since if we were to grant certiorari we would consider the constitutional challenge as an original matter, the subsequent development might well be relevant to that consideration. It was for that reason that we vacated the Court of Appeals' judgment for further consideration in light of the subsequent development. No additional evidence was taken and therefore neither the record nor the District Court or Court of Appeals opinions reflect the subsequent development. We therefore grant certiorari, vacate the judgment, and remand the case with the direction that the matter be consolidated with the ongoing proceeding in the District Court in *United States v. Board of Education of Chicago,* No. 80–C–5124, so that court may decide petitioners' challenge on the basis of a complete factual record. Because we have vacated the Court of Appeals' judgments in this case, the doctrine of the law of the case does not constrain either the District Court or, should an appeal subsequently be taken, the Court of Appeals.

So *Johnson* and *Milton* were consolidated with the *United States* action pending before this Court, and Board's present motion asks this Court to rule on the merits of those actions in light of the "complete factual record" developed in the *United States* action.

### Clearing the Underbrush

Board's initial brief argued:

1. This Court's Opinion and Judgment necessarily determined the constitutionality of the "controlled enrollment" (that is, quota) provisions of the Plan now governing Morgan Park and Gage Park High Schools (Mem. 6–13).

2. In any event plaintiffs have no constitutional right to attend their preferred school, so no rights are violated by their

exclusion or potential exclusion from any particular schools (*id.* at 14–16).

Some of Board's language evidently led plaintiffs to believe Board was contending they were *bound,* in the sense of claim preclusion (res judicata) or issue preclusion (collateral estoppel), by the Opinion and Judgment. Thus plaintiffs' opening argument (Ans. Mem. 1–5) was devoted to making the obvious point res judicata and collateral estoppel principles are not involved here. As Board says (R. Mem. 13–14 & n. *), the real issue is rather whether *Johnson* and *Milton* now represent collateral attacks on the Opinion and Judgment.

Board also initially chided plaintiffs for not having petitioned to intervene in the *United States* action. Mem. 11–13. As plaintiffs correctly respond (Ans. Mem. 5–6), their "failure" to intervene must be read in light of the fact their lawsuits predated the *United States* action. They simply did not face the situation of potential intervenors, who seek intervention to assert rights they have not previously advanced. Thus the intervention case law cited by Board (Mem. 9–13) cannot alone be dispositive here.[1]

On still another non-issue in the case, plaintiffs do not advance their cause by questioning (Ans. Mem. 10–12) Board's good faith in first adopting its stabilization quota plans and then retaining them in modified form in the Plan.[2] Surely the Supreme Court's remand of *Johnson* and *Milton* for consideration in light of the Decree's implementation calls for evaluation of plaintiffs' claims in the context of what this Court has found are Board's obvious good faith efforts to meet its obligations under the Decree and to this Court.

Plaintiffs have, however, helpfully clarified the nature of their claim (Ans. Mem. 7–8, footnote omitted):

The Board utterly misconstrues the thrust of plaintiffs' action. Plaintiffs do not claim an independent constitutional right to attend a neighborhood school. Instead, plaintiffs' claim is based on the right to equal treatment: the Board's quotas deny black children that reside in the Gage Park and Morgan Park attendance areas the opportunity to attend a neighborhood school when this opportunity is not similarly denied to any white child that resides in these attendance areas, or anywhere else in the city of Chicago. This, plaintiffs urge, is unconstitutional discrimination on the basis of race.

*See also* R.Mem. 4. It is to that claim this Court now turns.

### *Synergism: The Whole Plan and Its Parts*

Plaintiffs' claim of racially unequal treatment or racially unequal burdens is not literally correct. Board points out (R.Mem. 2 n. *) it has now adopted a controlled enrollment program at an over 65% white enrollment school. And plaintiffs themselves admit (Ans. Mem. 8 n. *) white students may be denied access to their neighborhood schools where those schools have been designated under the Plan for reception of students from outside those neighborhoods: magnet schools, metropolitan high schools or scholastic academies.[3]

That kind of dialogue, however, implies a duty to weigh the Plan's control provisions separately and apart from its other provisions. To avoid any such limited balancing analysis, this opinion will instead indulge a hypothesis more favorable to plaintiffs than the facts justify: that the Morgan Park and Gage Park enrollment controls (viewed in isolation) operate to exclude *only* neighborhood black students from attending those schools. Plaintiffs maintain (Ans. Mem. 8–18; and August 1981 Progress Report 136–42. There is no factual dispute in that respect.

---

1. As the later discussion reflects, however, there *is* a relevant analogy between plaintiffs' assertions and those of the most recent unsuccessful intervenors in the *United States* action.

2. Board's current quota systems for the two high schools is explained in detail at Plan 84–99, 263–66; School by School Analysis D. 12,

3. Moreover, black students barred from Morgan Park and Gage Park High Schools are eligible to transfer to such "magnet" and other integrated programs and schools. Board Mem. 6 n. *.

13) such racial classifications must be subjected to constitutional "strict scrutiny," imposing on Board the obligation to prove those classifications are necessary to accomplish a compelling state interest. *See Johnson,* 604 F.2d at 515 n. 5. And plaintiffs conclude judgment for Board is precluded because Board has not met that obligation on the present record.

But plaintiffs confuse the question of the level of scrutiny with the question of what is to be scrutinized. Contrary to plaintiffs' assertion (Mem. in Resp. to U.S. Comments 1–5), this Court did not employ a "reduced" level of scrutiny in approving the Plan. True, this Court accorded deference to Board's choice of constitutional means—but only when measured against the yardstick of its strict constitutional obligations. This Court made it plain Board would be held strictly to the Constitution's requirements (*see* Opinion, 554 F.Supp. at 915), and the Opinion repeatedly emphasized the Plan was approved only because its provisions were constitutionally permissible, even if the particular remedies chosen were arguable in administrative-judgment terms (*id.* at 920, 922, 923).

Stripped of rhetoric, plaintiffs' contention is really that (1) each individual aspect of the Plan and (2) every impact of every element within it must pass strict constitutional scrutiny. As the rest of this opinion reflects, Board's contrary argument (Mem. 8) is both perceptive and persuasive:

> In effect, the narrow and specific relief sought by the *Johnson* and *Milton,* plaintiffs was subsumed by that provided in the *United States* action, which was brought on behalf of all the minority students in the Chicago public schools.

In essence plaintiffs' claim represents another species of the argument for racial balance in all schools, an argument rejected by the Opinion, 554 F.Supp. at 923. That quest for numerical parity flew in the face of the fact it was simply not feasible—and more important for present terms, is not constitutionally necessary—to desegregate all predominantly minority schools. *Id.*

■ What plaintiffs fail (or refuse) to acknowledge is that individual aspects of the Plan, in isolation from one another, must necessarily impact disproportionately on white students and minority students. Obviously enrollment controls in a student population that is 60% black on a system-wide basis will more often impinge on blacks than on the 16% white student population. And similarly a particular program or site decision might impact disproportionately on the 20% Hispanic student population.[4] But those points suggest only that it is the *whole* with which a desegregation plan is necessarily concerned. And it is the whole that must be constitutionally judged. *Cf. Keyes v. School District No. 1,* 521 F.2d 465, 479 (10th Cir.1975) (finding heavier transportation burden on minority students permissible in context of burdens of overall transportation plan), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657 (1976).

■ Board points (R.Mem. 6, 8–9) to the administrative burden that would be caused if it had to assure each desegregative technique independently met "strict scrutiny." Administrative burdens of course are not dispositive. Far more critical here is the point (*id.* at 11–13) that claims like plaintiffs' have in context *become* collateral attacks on the Judgment. This is not a matter of intervention vel non in the *United States* action,[5] but in terms of legal equivalence plaintiffs' current assertion of their claims is much like seeking to intervene to contest a particular Board decision that im-

---

**4.** This was the complaint of the most recent effort to intervene, which focused on the Plan's treatment of Harrison High School.

**5.** This Court had the proposed Plan under advisement for many months to consider both comments by interested parties and, of equal importance, the extent to which the initial implementation appeared to support or to refute Board's projections. Though the Supreme Court's remand came some eight months before the Opinion issued, plaintiffs made no effort to provide the kind of input to the *United States* action as did other interested parties.

plicates racial factors.[6] Such intervention—such attack—must be gauged in terms of whether the claims arguably contest the constitutionality of the Plan as a whole.

 In a corresponding way, this Court's approval of the Plan in the Opinion and the Judgment must preclude attacks on separate facets of the Plan, taken in isolation. Approval of the Plan *as a whole* implicates rejection of the notion each and every element of the Plan must pass strict constitutional scrutiny in a vacuum, isolated from the other aspects of the Plan. That is because the whole really is more than the sum of its parts: The whole Plan desegregates the school system by techniques that individually classify by race and that individually (that is, if a particular technique were the only ingredient in the game plan) might be impermissible under the Constitution.

Controlling black enrollment in a given school as part of a plan to desegregate an entire system is just not the same thing as imposing a black quota independently. That is what our Court of Appeals meant when it originally upheld Judge Will's order. 604 F.2d at 518. That is what plaintiffs themselves really acknowledged when they first asked the Supreme Court to overturn Judge Will and the Court of Appeals (Brief for Petitioners on Writ of Certiorari, No. 79–1356 O.T. 1979, at 15 n.):

> Where a system-wide desegregation effort distributes burdens equitably between the races ... there is no equal protection violation.

And that is what the Supreme Court must have anticipated when it remanded *Johnson* and *Milton* for *consolidation* with the *United States* action: Implementation of the Decree has transformed claims of individual constitutional deprivation into claims that must be scrutinized against the Plan as an entirety.

So viewed, plaintiffs' contentions do become collateral attacks on a Plan that has passed constitutional muster. This Court has found the burdens of the Plan (in terms of students in attendance outside their neighborhood schools) impact in a way strikingly proportional to the racial makeup of the school population as a whole, 554 F.Supp. at 922–23. Any such outcome must perforce be the result of heavier impact in some places and lighter impact in others—else every component of the system would have to replicate in microcosm what the entire system reflects in macrocosm. And *that* the Constitution has never mandated, see *id.* at 923–24. For that reason plaintiffs' efforts to compel further factual probing into Board's motives are bootless, for the actions sought to be stigmatized are part of a nondiscriminatory whole.

Accordingly this Court finds the Judgment entitles Board to judgment as a matter of law in *Johnson* and *Milton.* Those actions are accordingly dismissed on the merits with prejudice.

---

**6.** See this Court's May 12, 1983 memorandum opinion and order in the *United States* action (denying a petition to intervene by students and parents of students of a high school scheduled for closing). This Court of course recognizes the differences between the tests for intervention and the standards applicable to a separate lawsuit against Board, *see United States v. South Bend Community School Corp.,* 710 F.2d 394 (7th Cir.1983). What the text statement refers to is the *substantive* constitutional test, rather than the procedural hurdles a prospective intervenor must overcome.