**Richard MAZANEC, et al., Plaintiffs-Appellants,**

v.

**NORTH JUDSON–SAN PIERRE SCHOOL CORPORATION, et al., Defendants-Appellees.**

No. 85–2977.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1986.

Decided Aug. 12, 1986.

As Amended Aug. 14, 1986.

Edward McGlynn Gaffney, Jr., Loyola Law School, Los Angeles, Cal., for plaintiffs-appellants.

David Michael Wallman, Asst. Atty. Gen., Indianapolis, Ind., Thomas O. Mulligan, Knox, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, BAUER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

To the Mazanecs, and those who have filed amicus curiae briefs on their behalf, this case poses serious constitutional questions concerning the right of parents to educate their children at home based on their sincerely held religious convictions. The district court did not share this vision of the proceedings. The judge found no basis for injunctive relief and that various immunities protected these defendants from damage suits under 42 U.S.C. § 1983, 614 F.Supp. 1152. The Mazanecs did receive some vindication in that the district court found that their children's home education was sufficient to constitute "instruction equivalent to that given in the public schools" under Indiana's compulsory education act. Ind.Code § 20–8.1–3–34. The district court did not, however, agree with the Mazanecs that this finding entitled them to attorney's fees as a prevailing party in a section 1983 suit. We find that the plaintiffs' claims for injunctive and declaratory relief are moot; that with respect to the school corporation and its attendance officer (the only two defendants whose immunity is challenged) the record indicates a lack of wrongdoing that precludes the imposition of any monetary award against these defendants; and that the Mazanecs were not prevailing parties entitled to attorney's fees under 42 U.S.C. § 1988. The judgment of the district court is accordingly affirmed.

## I.

At the start of the 1979–80 school year Barbara Mazanec, an ordained minister of the Jehovah's Witness faith, pulled her children out of the North Judson school system. She did this because she believed that the environment and education provided by the public schools were incompatible with her family's religious precepts. The Mazanec children were enrolled in a home school program through the Santa Fe Community School for the 1979–80 school term. Defendant James Moore, superintendent and Local Attendance Officer of the North Judson-San Pierre School Corporation, inquired into what arrangements had been made for the education of the children. Moore contacted the director of the Santa Fe Community School and, although the superintendent had doubts about the efficacy of such a home school program, he believed that it was sufficient to bring the Mazanecs into compliance with the Indiana compulsory education statute.

The problems that led to the filing of the current action arose in September of 1980. Barbara Mazanec decided not to re-enroll her children in the Santa Fe Community school but to create her own school, the Greenhouse Academy, that would be operated out of the Mazanec home. Mr. Moore once again inquired as to the alternative educational arrangements that were being made for the children. Mrs. Mazanec responded to his inquiries by a letter dated September 10, 1980 that stated that she was aware of her obligations and rights under Indiana law and that there would be a slight delay in complying with Moore's request.

On September 22, 1980 Mr. Moore swore out a complaint against the Mazanecs with the prosecuting attorney for the 44th Judicial Circuit of the State of Indiana. The record indicates that this decision was based on evidence that the children were seen unsupervised during school hours a month after the start of the term at the public schools and on the refusal of the Mazanecs to cooperate with Moore in verifying the educational program of the Greenhouse Academy. The superintendent's efforts to satisfy himself that the Mazanecs were complying with Indiana law were met with what the district judge described as a "Mazanec stone-wall."

On September 29, 1980, the day the prosecutor elected to file a criminal information against the parents, Barbara Mazanec finally responded to Moore with a letter announcing the opening of the Greenhouse Academy, a legally incorporated private school. This letter described the curriculum of the school in very general terms and expressed the opinion that the letter

was sufficient to prove the family was in compliance with Indiana law.

In the ensuing months Mrs. Mazanec entered into a dialogue with Marilyn Mabry, the State Attendance Officer, concerning the requirements for the establishment of a home school. The focus of these conversations was Mrs. Mazanec's attempts to understand what she had to do in order to comply with the compulsory attendance law. These conversations culminated in a letter, dated March 30, 1981, in which Ms. Mabry expressed the opinion that the Mazanecs were in compliance with Indiana law. Significantly, there is no evidence in the record indicating that Mabry's opinion was ever provided to Mr. Moore or the prosecuting attorney. In a letter to Mr. Moore dated July 13, 1981, Mrs. Mazanec, in the course of announcing her intention to sue the superintendent and the school corporation for malicious prosecution, referred to the letter from the State Attendance Officer. Mr. Moore, however, never saw Ms. Mabry's letter nor was he ever contacted by the state attendance office.

On August 7, 1981, the state circuit court dismissed the criminal charges pending against the Mazanecs for lack of probable cause. The prosecutor, believing the dismissal was the product of a technical deficiency, filed a new information accompanied by a new affidavit that the prosecutor drafted for Mr. Moore's signature. In September of 1981 the state court once again dismissed the charges. At this point the prosecutor decided that the misdemeanor charges did not warrant further consideration by his office.

The Mazanecs' civil rights complaint has had a longer and more complex history than the criminal charges that precipitated the suit. Their amended complaint asserts eight causes of action under the first and fourteenth amendments. The rights allegedly abridged include the right to free exercise of religion, the right of freedom of speech, the right to freedom of association in educational endeavors, the right under the Due Process clause to have their liberty and property interests in the Greenhouse Academy protected, and the right to equal protection of the laws. The complaint names as defendants Mr. Moore, the school corporation, the prosecuting attorney, and Ms. Mabry, and seeks injunctive and declaratory relief, as well as compensatory and punitive damages. As an initial matter the district court disposed of the case based on the doctrine of abstention. This court, however, did not accept the invocation of that doctrine. *See Mazanec v. North Judson-San Pierre School Corp.*, 750 F.2d 625 (7th Cir.1984), and *Mazanec v. North Judson-San Pierre School Corp.*, 763 F.2d 845 (7th Cir.1985).

On remand the district court conducted a three-day hearing following which the court entered an opinion dismissing the Mazanecs' complaint. The district court believed that counsel for the Mazanecs had taken an overexpansive view of the case. The court found that the requested injunctive relief, which amounts to providing guidelines for state and local officials in applying Indiana's compulsory attendance act, essentially would be an advisory opinion, particularly in light of the fact that there was no continued threat of prosecution. With respect to the damage claims the district court ruled that all the defendants were entitled to good faith or absolute immunity. The district court did, however, make one important finding for the plaintiffs: the district judge found that the Mazanec children had received an education equivalent to that available in the public schools. Having so determined the district court found it unnecessary to decide the constitutional issues because the state law fully accommodated the constitutional rights asserted.

This last finding served as the basis for the Mazanecs' claim in their motion to amend judgment that they had prevailed on a significant issue in the litigation and were thus entitled to attorney's fees under 42 U.S.C. § 1988. The district court rejected the request on the grounds that plaintiffs had, for various reasons, failed to establish a violation of their constitutional rights. This appeal ensued.

## II.

Based on the quality of plaintiffs' briefs and those of the amici it is obvious that a great deal of time and effort has been spent in attempting to develop this dispute into a major first amendment case. While we are not unsympathetic to the alleged constitutional underpinnings of the Mazanecs' claim, we share the district judge's impression that this case is an inappropriate vehicle for vindicating the rights asserted in the complaint.

### The Claim for Injunctive Relief

■ According to the representations of plaintiffs' counsel at oral argument, the Mazanec children are currently being educated at a school in Illinois. The plaintiffs, nonetheless, argue that the injunctive aspect of the case is not moot because of the threat of future prosecution by the states attorney's office that has not acknowledged its wrongdoing and because of the need to provide the state of Indiana with guidance about how to comport its attendance law with the mandates of the Constitution. The federal courts cannot use their injunctive power in the absence of a party who will benefit from the exercise of such authority. Injunctions cannot be issued just for the common weal or on behalf of those who, although not parties, are currently or may be in the future burdened by the defendant's allegedly illegal conduct. *See DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974). In the present case we now lack the real party in interest necessary to the exercise of our authority to mete out injunctive relief. The fact that the prosecutor voluntarily ceased the allegedly offending conduct does not necessarily moot the case, because "[t]he defendant is free to return to his old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct.

894, 897, 97 L.Ed.2d 1303 (1953). The decisive fact, however, is the Mazanecs' decision to have their children educated outside of North Judson. The Mazanecs claim that this action was motivated out of the fear of future prosecutions and other incidents not relevant to this appeal. This, however, leaves us with little more than speculation over whether the Mazanecs will ever again be subject to the powers of the prosecutor and the school corporation concerning the compulsory attendance laws. This type of speculative contingency is too thin a reed to support injunctive relief. *See DeFunis*, 416 U.S. at 320 n. 5, 94 S.Ct. at 1707 n. 5.

We are not unmindful of the special care that must be taken in evoking a doctrine such as mootness where first amendment rights are asserted. Plaintiffs may abandon their claim because of the chilling effect of the government conduct while still retaining the desire to continue on their original course. That, however, is not this case. The Greenhouse Academy weathered the storm of criminal charges and continued to operate for sometime thereafter. The record indicates that the Mazanec children were sent to Illinois for reasons apart from the circumstances giving rise to this action. Unlike the classic "chilling effect" case, this case presents no basis for believing, other than pure speculation, that injunctive relief would in some way benefit the plaintiffs in their current situation.[1]

### The Claim for Monetary Damages

Regardless of the effects of time on their pursuit of injunctive relief, the Mazanecs still have a viable claim for damages. The district court found that all the defendants had immunity from damages and the plaintiffs do not appeal the issue of immunity with respect to the prosecuting attorney or

---

1. We note that the same change in circumstances that served to moot the plaintiffs' claim for injunctive relief also moots their claims for declaratory relief. The facts must demonstrate "a controversy of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Super Products Corp. v. D.P. Way Corp.*, 546 F.2d 748, 753 (7th Cir.1976) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). The Mazanecs have failed to show how their interests would be better served by declaratory relief where they have voluntarily removed themselves from the zone of the alleged danger. *See McKinnon v. Talledega County*, 745 F.2d 1360, 1363 (11th Cir.1984).

Marilyn Mabry, the state attendance officer. The Mazanecs do contest the district court's decision to grant immunity to Superintendent Moore and his employer, the school corporation. The district court conceded that the school corporation could not assert a good faith immunity defense under *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), but it nevertheless found that there was no basis for liability against the school corporation because it had given only "after-the-fact approval" to Mr. Moore's actions. The plaintiffs challenge this conclusion based on the Supreme Court's recent decision in *Pembaur v. City of Cincinnati*, — U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), which holds that a municipality may be subject to section 1983 liability based on the single decision of a municipal policymaker.

Turning its focus to Mr. Moore, the district court analyzed the facts and decided that Mr. Moore could not be held responsible for whatever damages the Mazanecs experienced as a result of the criminal prosecution and that, alternatively, the superintendent was entitled to good faith immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and its progeny. Thus, the district court seems to have taken the path of finding immunity while nonetheless reaching the merits of the plaintiffs' claims, at least with respect to these two defendants.

■ We need not concern ourselves with the vagaries of civil rights immunity in order to resolve this case. It is clear that Mr. Moore was an authorized policymaker and that in making his decision to pursue prosecution of the Mazanecs he made policy for the school corporation within the meaning of *Pembauer*, 106 S.Ct. at 1303–04. Thus Mr. Moore's actions, whether analyzed for his own liability or that of his employer, must be subject to scrutiny. The district court did review his actions and concluded that Mr. Moore, and thus, by necessity, the school corporation, had done nothing wrong. We have been presented with no reason to disturb this conclusion.

It is significant to note that the Mazanecs do not claim that Indiana cannot, consistent with the Free Exercise clause, have a compulsory education law. *See Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). They contest the language used in the statute and its application by local school officials and the prosecutor. To the extent Indiana can have such a law, it is axiomatic that it can create a mechanism to monitor compliance with the law. The Mazanecs do not quarrel with this either. They argue that the statute is sufficiently vague to allow the monitoring authorities to harass them because of their religious beliefs and because of their assertion of their right to free speech in the form of establishing a home school.

The problem with the Mazanecs' view of this case is that it is based on the assumption that Mr. Moore initiated the prosecution because of a hostility to home schooling or to Jehovah's Witnesses. The district court found, and the record does not indicate that the finding is clearly erroneous, that the Mazanecs were prosecuted because they frustrated the attempts at verifying compliance with the law, not because their actions were deemed incapable of meeting the requirements of the law.

The district court found that Mr. Moore made reasonable efforts to discharge his statutory duty to investigate the educational arrangements made for the plaintiffs' children and that, based on the information available at the time, he acted properly in turning this information over to the prosecutor. It is important to emphasize that, despite the Mazanecs' contrary contentions, it was the prosecutor, not Mr. Moore, who made the ultimate decision to press criminal charges and who controlled the course of the prosecution. Thus at one level, ascribing responsibility to Mr. Moore and the school corporation is difficult simply because the harassment, to the extent the acts of the prosecution can be so described, was ultimately the decision of a prosecutor. If the evidence indicated that Moore had given the prosecutor erroneous information or failed to attempt to investigate the situa-

tion adequately, this might have been a different case. Given the district court's finding that Mr. Moore's investigation was proper in the context of the plaintiffs' uncooperative attitude, however, the superintendent and the school corporation cannot be held liable for any errors in the exercise of the prosecutor's discretion to continue the prosecution after September 29, 1980.

Although Moore acted properly and in accord with his statutory responsibilities, that does not mean that the statute necessarily passes constitutional muster. Under the circumstances of this case, however, the plaintiffs' conduct leading up to their prosecution undercuts their attempts to attack the statute, and the governmental action, on constitutional grounds. There is no dispute that the Indiana statute allows in theory and in practice the type of home education desired by the Mazanecs. *See State v. Peterman*, 32 Ind.App. 665, 70 N.E. 550 (1904). There was testimony that 178 home schools were being operated in Indiana at the time of the trial. Thus, to the extent such a right exists, Barbara Mazanec's constitutional right to educate her children as she saw fit was capable of being accommodated under Indiana law *provided* that there are no material flaws in the language of the statute or in the systematic enforcement of the law by government officials. The problem here is that the alleged wrong, the prosecution, was found to be a product of the Mazanecs' failure to cooperate rather than infirmities in the statute or its application. Since a compulsory education law is in theory constitutional, as is the inevitable enforcement of the law, it is clear that under any such law parents would have to assist state officials charged with monitoring compliance. Thus, even in a state with a constitutionally perfect education law and system, people like the plaintiffs who frustrate state officials in enforcing the compulsory education law will be prosecuted. Under these circumstances the Mazanecs are not the proper parties to be challenging the constitutionality of the statute, or Mr. Moore's method of enforcing it, because the record indicates that it was not the alleged consti-

tutional infirmities that caused their injuries. *See generally Muckway v. Craft*, 789 F.2d 517, 520–22 (7th Cir.1986).

The Mazanecs devote a considerable portion of their argument to the state's alleged failure to accommodate their first amendment rights by using a less restrictive alternative to criminal prosecution. Once again this theoretically compelling argument is fatally weakened by the plaintiffs' conduct. The less restrictive alternatives suggested all involve parental participation, an item that the district court concluded was not readily available. The area of compulsory education involves a delicate balancing of the first amendment rights of both parents and children and the interests of the state in education. *See Yoder*, 406 U.S. at 234–35, 92 S.Ct. at 1542–43. In reviewing a statute that seeks to accommodate the competing sides of the balance, or the actions taken pursuant to such a statute, we must have before us parties whose rights were allegedly violated by the state's policy or enforcement. We will not reach out to decide constitutional issues that may arise in a close case on behalf of plaintiffs, like the Mazanecs, whose conduct puts them clearly within the zone in which the government is justified in taking action, including prosecution.

### The Claim for Attorney's Fees

The final issue raised by the Mazanecs is their right to attorney's fees under 42 U.S.C. § 1988 as a prevailing party in a section 1983 suit. They argue that the district judge's finding that the children received an equivalent education under Indiana law constituted a partial award of the declaratory relief sought. The Mazanecs would be considered the "prevailing party" for purposes of determining their entitlement to reasonable attorney's fees under section 1988 if they can be deemed to have succeeded " 'on any significant issue in litigation which achieves some of the benefit [they] sought in bringing the suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*,

581 F.2d 275, 278–79 (1st Cir.1978)). *See also Continental Web Press, Inc. v. N.L. R.B.,* 767 F.2d 321, 323 (7th Cir.1985); *Mary Beth Co. v. City of Chicago,* 723 F.2d 1263, 1278–79 (7th Cir.1983). The district court rejected the fee request on the grounds that neither Mr. Moore nor the school corporation had violated the constitution and that Mr. Moore and the remaining defendants were entitled to immunity. This precluded, according to the district court, the imposition of liability for attorney's fees under *Kentucky v. Graham,* —— U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

■ We agree with the district court but on a somewhat narrower basis. What the plaintiffs received was a declaration or a finding that they were in compliance with state law. This is not something the Mazanecs "sought" to achieve in bringing this lawsuit. The Mazanecs' amended complaint prays for injunctive, declaratory, and monetary relief based on alleged violations of their constitutional rights and those of their children. They never prevailed in getting any declaration that their civil rights claims had merit. Section 1988's purpose is to encourage the redress of civil rights violations. *Coop v. City of South Bend,* 635 F.2d 652, 655 (7th Cir.1980). It would be an unsupportable extension for us to predicate any form of relief on a finding which was based on state law rather than a civil right guaranteed by federal law. The medium of a section 1983 suit does not convert every pro-plaintiff finding into a victory on "a significant issue." The success of the plaintiffs must be analyzed in the context of what they sought to accomplish and the purposes of the attorney's fees statute. In the absence of a finding of a federal civil rights violation, a declaration of compliance with state law does not trigger the possibility of attorney's fees under section 1988.

### III.

For the aforementioned reasons, the judgment of the district court is affirmed.