**Jason M. WILLAN, et al., Plaintiffs,**

v.

**MENOMONEE FALLS SCHOOL BOARD, et al., Defendants.**

No. 86–C–1214.

United States District Court, E.D. Wisconsin.

April 24, 1987.

---

Barr & Shapiro, by Charles H. Barr, Menomonee Falls, Wis., for plaintiffs; Irvin B. Charne, Howard A. Pollack, Charne, Glassner, Tehan, Clancy & Taitelman, S.C., Milwaukee, Wis., David S. Tatel, Elliot M. Mincberg, Hogan & Hartson, Washington, D.C., of counsel.

Grant F. Langley, City Atty., by Patrick B. McDonnell, Sp. Deputy City Atty., and Susan D. Bickert, Asst. City Atty., Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

Jason Willan, a minority pupil residing in Menomonee Falls, Wisconsin, and his parents commenced the instant action seeking damages, declaratory and injunctive relief, and attorneys' fees pursuant to 42 U.S.C. §§ 1981, 1983, 1985 & 1988. The Willans also propose a class of plaintiffs to this action. The putative class consists of "all other similarly situated public school parents and guardians thereof."

The named plaintiffs challenge the constitutionality of Wis.Stat. § 121.85 (enacted as 1975 Wis.Laws ch. 220 and commonly known as "chapter 220"). Chapter 220 authorizes school districts to enter into voluntary agreements providing for interdistrict transfers of pupils to promote racial integration. Under these agreements, minority students living in Milwaukee may transfer to predominantly white suburban school districts; the state subsidizes their tuition. Similarly, white students living in participating suburbs may transfer to programs in the Milwaukee public schools and receive comparable state subsidization. At all times relevant to this case, a chapter 220 agreement existed between Menomonee Falls, a predominantly white suburban school district, and the Milwaukee public schools.

Currently, before the court is the defendants' motion to dismiss on grounds of mootness pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Because I am persuaded that the plaintiffs' claims are moot, the motion will be granted.

## BACKGROUND

Jason Willan is at least one-half Wisconsin Oneida Indian and is recognized as a minority group pupil for purposes of chapter 220. *See* Wis.Stats. § 121.845(2) (defining minority group pupils as Black Americans, native Americans, Spanish-surnamed Americans and Oriental Americans). In the spring of 1986, at the suggestion of a guidance counselor at his school, Jason Willan applied to a summer school program at a Milwaukee high school. Menomonee Falls offered no comparable summer program. Three days before the summer school opened, Jason and his parents were notified that the state would not subsidize tuition and transportation costs on Jason's behalf. The Willans chose to send Jason to another program in Wauwatosa because tuition and transportation costs were substantially less than the unsubsidized cost of the Milwaukee program. Accordingly, the Willans paid $447.60 for Jason's summer school experience.

In August 1986, the Willans submitted a claim for $447.60 to the Menomonee Falls School Board. Their claim was rejected.

Ultimately, the Willans filed the instant lawsuit against the Menomonee Falls School Board, its individual members, the Milwaukee Board of School Directors and its individual members.

On December 16, 1986, I signed a stipulation and order of dismissal of the Menomonee Falls School Board and its individual members. The plaintiffs agreed to settle their claims against the Menomonee Falls defendants for approximately $2,000: the amount of the plaintiffs' tuition and transportation expenditures, as well as a portion of the plaintiffs' then incurred attorneys' fees. The settling defendants expressly disclaimed any admission of wrongdoing but by their monetary settlement are protected from further claims for damages or attorneys' fees as a result of this dispute. The settling defendants also acknowledged the plaintiffs' intent to pursue this action against the remaining Milwaukee defendants.

## ANALYSIS

*Motion to Dismiss for Lack of Subject Matter Jurisdiction*

It is the remaining defendants who have filed the motion to dismiss now before me. Under the auspices of Rule 12(b)(1), Federal Rules of Civil Procedure, the defendants contend that this court is without subject matter jurisdiction in this case because the plaintiffs' claims are moot. I agree.

■ In determining whether dismissal on grounds of mootness is appropriate in this case, I have only considered the nature of the named plaintiffs' claims. Although this case has been framed as a class action, the plaintiffs have not moved for certification and indeed the putative class has never been certified. "[I]f the claim of the class representative becomes moot in advance of certification, the case may come to a halt even if a properly certified class action would survive the mootness of the representative claims." *Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 626 (7th Cir.1986). Thus, the following discussion regarding mootness considers the substance of the Willans' claims only.

■ Article III of the Constitution permits the federal courts to consider "cases" or "controversies." The prohibition against judicial review of moot cases is derived from this constitutional limitation on jurisdiction. *See North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *see also DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974). "To satisfy the Art. III case-or-controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 375, 78 L.Ed.2d 58 (1983).

■ In the instant case, although the plaintiffs may have suffered some actual injury in the past, a favorable decision by this court could not effectively redress any such injury. Consider, for example, the plaintiffs' original claim for monetary relief. The compromised settlement between the Willans and the Menomonee Falls defendants accomplished redress of this claim without assistance from the court.

In *DeFunis*, the Supreme Court identified mootness in a situation similar to the one now before me. In that case, the Court noted that the parties had entered into a stipulation that satisfied the plaintiff's demand for a mandatory injunction ordering the defendants to permit him to be matriculated in the University of Washington Law School. In light of this stipulated arrangement, which, like the arrangement in the Willans' case, did not resolve the underlying constitutional challenge, the Court held that the plaintiff's case was moot. The Court opined as follows: "A determination by this Court of the legal issues tendered by the parties is no longer necessary to compel [Marco DeFunis' matriculation], and could not serve to prevent it."

Similarly, no resolution of the legal issues presented is necessary to compel or prevent the Willans from obtaining monetary relief. Productive negotiations between the plaintiffs and one group of defendants has resulted in substantial if not full pecuniary redress. The plaintiffs' claim for damages, therefore, must be dismissed on grounds of mootness.

■ The plaintiffs' claims for declaratory and injunctive relief are likewise moot. Jason Willan attended and completed a summer school program last summer. There is no assertion that Jason Willan or his parents are currently paying tuition and transportation costs for a program in the Milwaukee public schools, or one comparable. Nor is it alleged that Jason Willan contemplates such attendance at some time in the future. Thus, the plaintiffs' claims for equitable relief can be construed to arise only out of the defendants' conduct of last summer. Such claims, however, no longer constitute a present case or controversy.

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974). *See also Golden v. Zwickler*, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969) (past injury from allegedly unconstitutional statute deemed moot in absence of demonstration of "sufficient immediacy and reality" of present effects); *cf. Super Products Corp. v. D.P. Way Corp.*, 546 F.2d 748, 753 (7th Cir.1976) (requiring sufficient immediacy and reality of actual controversy for the issuance of declaratory judgment on the validity of a patent). Recently, the court of appeals for the seventh circuit found an action to be moot where no party would benefit from the injunctive or declaratory relief sought. *Mazanec v. North Judson-San Pierre School Corporation*, 798 F.2d 230 (7th Cir. 1986). In that case, the court held that neither an injunction nor declaratory relief should be issued "just for the common weal or on behalf of those who, although not parties are currently or may be in the future burdened by the defendant's allegedly illegal conduct." *Id.* at 234.

In the instant case, there are no allegations that the Willans are currently being affected by the operation of chapter 220. Issuance of declaratory or injunctive relief would, therefore, not benefit the Willans. Fashioning such relief would, in my opinion, be an improper exercise of jurisdiction.

The plaintiffs attempt to counter the defendant's mootness argument by suggesting that despite the monetary settlement between the plaintiffs and the Menomonee Falls defendants, the alleged unlawful conduct could recur. According to the plaintiffs, "[t]here has not been an indication of a policy change so as to protect Jason or any member of the proposed class from the type of invidious discrimination challenged here, but there are substantial indicia from the terms of the settlement agreement that that policy in fact has not been changed." Plaintiffs' Brief in Opposition to Motion to Dismiss [Plaintiffs' Brief] at 23.

■ The possibility of repetition can only save an otherwise moot case if the challenged action falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. *See, e.g., California Coastal Comm'n v. Granite Rock Co.*, —— U.S. ——, ——, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987); *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973); *Davis v. Ball Memorial Hospital Ass'n*, 753 F.2d 1410, 1418 (7th Cir.1985). Before this exception to the mootness doctrine may be applied, two conditions must be met: "[T]he challenged action was in its duration too short to be fully litigated prior to its cessation or expiration and there [is] a 'reasonable expectation that the same complaining party w[ill] be subjected to the same action again.'" *United States v. Peters*, 754 F.2d 753, 758 (7th Cir.1985) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979)). *See also James Luterbach Construction Co. v. Adamkus*, 781 F.2d 599, 602 (7th Cir.1986).

■ Under the facts of this case, I am not persuaded that either of these conditions exist. This case does not arise out of an inherently transitory situation. But for their acceptance of compensation, the plaintiffs' alleged injury would still be unredressed and still be amenable to litigation. Moreover, just because Jason Willan's case no longer contains live issues for the court, "it hardly follows that the issue he raises will in the future evade review." *DeFunis, supra*, 416 U.S. at 319, 94 S.Ct. at 1707.

If, as the plaintiffs allege, the chapter 220 policy complained of still exists, there is nothing to prevent a subsequent case from attacking that portion of the statutory plan. *See id.* (as law school admission policy remained unchanged, there was no reason to expect that a subsequent case would fail to challenge it).

As to the second prerequisite of this mootness doctrine exception, I am similarly unswayed. There is absolutely no assertion of even a "reasonable expectation" that the Willans will be subjected to the same action again. The plaintiffs' brief on this point at best speculates that some members of the proposed class may be subjected to the challenged conduct. However, proposed class members are not parties before this court; their possible future actions are simply irrelevant to a determination of whether there exists a reasonable expectation that the named plaintiffs in this action will be subjected to the alleged unconstitutional operation of chapter 220. Absent any allegations regarding the named plaintiffs' future plans, I conclude that the plaintiffs' claims are not excepted from dismissal on grounds of mootness.

The plaintiffs' final argument regarding mootness is based on the language of the stipulated settlement agreement between the Willans and the Menomonee Falls defendants. Pursuant to that agreement, dismissal of the settling defendants was without prejudice. Plaintiffs' counsel now request an opportunity to rejoin these defendants in hopes of revitalizing his clients' claims. In my opinion, such an effort would be futile.

Even if the settling defendants were rejoined, my conclusion regarding the moot condition of this case would be unchanged. The plaintiffs' monetary claim would still be satisfied even if the Menomonee Falls defendants were brought back into this case; similarly, there would be no difference in the necessity, or lack thereof, for declaratory or injunctive relief. Accordingly, I am convinced that dismissal on grounds of mootness would be warranted even if the Menomonee Falls defendants were rejoined.

Had I determined that this case was not moot, I would still arrive at the same ultimate conclusion regarding dismissal. If the Willans' claims presented a justiciable controversy, dismissal would be warranted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Thus, for the remainder of this discussion, I will assume that the plaintiffs' claims are not moot and briefly explain why, even if deemed to be "live," the plaintiffs' complaint fails to state a claim upon which relief can be granted. Before setting forth the framework for my decision on the substance of the defendants' Rule 12(b)(6) motion, it is advisable briefly to discuss the class action status of this matter.

*Determination of Class Certification*

Rule 23(c), Federal Rules of Civil Procedure, mandates that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." As noted earlier in this opinion, although the plaintiffs' complaint is framed as a class action, there has been no formal motion for class certification. Still an open question in this circuit is whether a district court judge has an obligation *sua sponte* to determine whether an action shall proceed as a class action. *See Trotter v. Klincar,* 748 F.2d 1177, 1185 n. 10 (7th Cir.1984).

Despite the obscurity regarding the precipitator of determinations of class certification, it is clear that an order determining class action status should be issued prior to resolution on the merits of a putative class action. *See Peritz v. Liberty Loan Corporation,* 523 F.2d 349, 353–54 (7th Cir.1975); *see also Glidden v. Chromalloy American Corporation,* 808 F.2d 621, 626 (7th Cir.1986). There is some case authority suggesting an exception to this general rule where a defendant explicitly waives the right to an early certification hearing. *See e.g., Ahne v. Allis-Chalmers Corp.,* 102 F.R.D. 147, 148 (E.D.Wis.1984). *Accord Postow v. OBA Federal Savings & Loan Ass'n,* 627 F.2d 1370, 1382–83 (D.C. Cir.1980); *Katz v. Carte-Blanche Corp.,* 496 F.2d 747, 762 (3rd Cir.1974). In the

absence of express direction from the court of appeals for the seventh circuit, however, I believe the better course is to resolve certification before addressing a motion to dismiss for failure to state a claim. Indeed, recently the court of appeals for the seventh circuit has again cautioned "district courts against disposing of putative class actions without deciding whether a class should be certified." *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1034 n. 1. (7th Cir.1987)

Rule 23(a), Federal Rules of Civil Procedure, sets forth the prerequisites for determining whether a case may be certified as a class action:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ In my opinion, the plaintiffs will not be able to demonstrate at least two of these class certification prerequisites. Pursuant to Rule 23(a)(1), Federal Rules of Civil Procedure, a class may sue only if "the class is so numerous that joinder of all members is impracticable." The size of the putative class in this case, minority public school pupils, is described by the *plaintiffs* as "comparatively miniscule." Plaintiff's Brief at 15. In view of this estimate of size, I am not persuaded that joinder of all members of the putative class in this case is indeed impracticable.

Nor am I persuaded that, even if a sufficiently large class could be identified, the Willans and their counsel "will fairly and adequately protect the interests of the class." Rule 23(a)(4), Federal Rules of Civil Procedure. As noted, the named plaintiffs have not applied for class certification in this matter. Failure to raise the certification issue suggests, at least, the possibility of inadequate representation. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 404–05, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977). *See also Trotter, supra*, 748 F.2d at 1185 n. 10. Thus, in light of numerosity and representation problems, I conclude that class certification is not appropriate in this case.

*Motion to Dismiss for Failure to State a Claim*

The court of appeals for the seventh circuit recently reiterated its admonition that dismissal on grounds of failure to state a claim "is not a decision for the district court to make lightly." *Gomez, supra*, 811 F.2d at 1039. In ruling on such a motion, I must accept the well-pled allegations of the complaint as true and view them in a light most favorable to the plaintiffs. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984). Even in light of this "high barrier," *Gomez, supra*, 811 F.2d at 1040, I am persuaded that the extant defendants' motion to dismiss should be granted.

■ It is well-settled in federal law that state and local school authorities may voluntarily adopt plans to promote integration even in the absence of a specific finding of past discrimination. *See, e.g., McDaniel v. Barresi*, 402 U.S. 39, 91 S.Ct. 1287, 28 L.Ed.2d 582 (1971). Indeed, the Supreme Court has recognized that:

School authorities are traditionally charged with broad power to formulate and implement educational policy and might well conclude, for example, that in order to prepare students to live in a pluralistic society each school should have a prescribed ratio of Negro to white students reflecting the proportion for the district as a whole. To do this as an educational policy is within the broad discretionary powers of school authorities; absent a finding of a constitutional violation, however, that would not be within the authority of a federal court.

*Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). In Wisconsin, this broad state power is reflected in the state constitution, Wis. Const. art. X, § 3, and various state statutes. *See e.g.*, Wis. Stat. ch. 121. Indeed, chapter 220 is a product of the state's traditional plenary

power to promulgate school policy. Specifically, it is an attempt to foster equal opportunities for education.

SECTION 1. **Legislative declaration**
The state of Wisconsin hereby declares that it is the announced policy of the state to facilitate the transfer of students between schools and between school districts to promote cultural and racial integration in education where students and their parents desire such transfer and where schools and school districts determine that such transfers serve educational interests. The state further declares that it is a proper state expense to encourage such transfers through the provision of special aids.

1975 Wis.Laws ch. 220, § 1.

In light of the broad powers vested in the state to implement educational policy, I am persuaded that chapter 220 is a legitimate exercise of the Wisconsin legislature's plenary authority to fashion school policy. However, that chapter 220 is a legitimate exercise of the state's plenary school authority does not alone warrant dismissal pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. If Wisconsin school laws conflict with the fourteenth amendment, as the plaintiffs charge, this court has an affirmative duty to prescribe the appropriate remedy. *See Milliken v. Bradley,* 418 U.S. 717, 744, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069 (1974). Thus, I must determine whether chapter 220, however consistent it is with the state's plenary power to oversee Wisconsin public schools, violates the equal protection clause of the fourteenth amendment.

The plaintiffs contend that their challenge is not truly so sweeping. Construing their allegations in a light most favorable to them, as I must in this case, I will interpret their claims as they suggest I should. According to their brief:

On the contrary, plaintiffs complain of Chapter 220, and acts and omissions of public officials thereunder, only insofar as they deny minority suburban public school pupils a free educational opportunity—in this case, the opportunity to attend summer school—which is provided to white suburban public school pupils. Plaintiffs have no quarrel with any other aspect of Chapter 220; they assume *arguendo* that allowing minority city public school pupils to transfer without cost to suburban public schools, while denying that opportunity to white city public school pupils, is a constitutionally permissible "affirmative action" tool in a voluntary integration plan. Nor do plaintiffs challenge the general objective of integrating schools either on a district wide or interdistrict basis.

Plaintiffs' Brief at 6. (footnote omitted)

The plaintiffs urge me to deny the pending motion to dismiss by considering the constitutionality of only the particular aspect of chapter 220 that impinged upon Jason Willan. In the alternative, they suggest that I sever the portion of the statute complained of for purposes of ruling on constitutionality pursuant to *Wis.Stat.* § 990.001(11). In ruling on a statutory plan for school integration, however, it is my opinion that such particularized attention would be improper.

In a recent decision issued by the court of appeals for the seventh circuit, dismissal of a constitutional challenge to an individual aspect of an overall Chicago school desegregation plan was affirmed. In *Samayoa v. Chicago Board of Education,* 798 F.2d 1046 (7th Cir.1986), the plaintiffs were Cuban, American-Indian, and white students whose admission to a magnet school was revoked after a revision of the racial composition of the school in accordance with a voluntary desegregation plan. The court described the plaintiffs' efforts to attack the desegregation plan by challenging only its effect on them as "bootless." *Samayoa, supra,* 798 F.2d at 1050, (quoting *United States v. Chicago Board of Education,* 567 F.Supp. 290, 296 (N.D.Ill. 1983)).

The Willans' narrow challenge to chapter 220 is bootless as well. Even if the plaintiffs did not concede the constitutionality of the overall purpose of chapter 220, my conclusion would be the same. It is reasonable to assume the constitutionality of the entire statutory plan in view of various indicia of its constitutionality.

For example, the *Swann* opinion itself describes and impliedly approves of a desegregation transfer plan comparable to chapter 220:

> An optional majority-to-minority transfer provision has long been recognized as a useful part of every desegregation plan. Provision for optional transfer of those in the majority racial group of a particular school to other schools where they will be in the minority is an indispensable remedy for those students willing to transfer to other schools in order to lessen the impact on them of the state-imposed stigma of segregation. In order to be effective, such a transfer arrangement must grant the transferring student free transportation and space must be made available in the school to which he desires to move.

*Swann, supra,* 402 U.S. at 26–27, 91 S.Ct. at 1281.

Also, although the federal courts have not yet directly ruled on chapter 220, at least one Supreme Court justice has specifically commended that plan. In his dissent to a decision affirming a judicial desegregation remedy, Justice Powell lauds the Wisconsin legislature's implementation of chapter 220. He describes it as "the sort of effort that should be considered by state and local officials and elected bodies." *Columbus Board of Education v. Penick,* 443 U.S. 449, 488–89 n. 7, 99 S.Ct. 2941, 2992–93 n. 7, 61 L.Ed.2d 666 (1979) (Powell, J. dissenting). This implicit endorsement of the constitutionality of chapter 220 persuades me that the plaintiffs' extant collateral attack on an individual aspect of the plan must fail.

■ The plaintiffs also oppose summary dismissal of this case by asserting that chapter 220 must be subjected to and cannot withstand strict scrutiny analysis. I agree that strict scrutiny is the proper level of judicial review in challenges to policies based on racial classifications. *See University of California Regents v. Bakke,* 438 U.S. 265, 291, 98 S.Ct. 2733, 2748, 57 L.Ed.2d 750 (1978). However, this "most exacting judicial examination" would be warranted only if the constitutionality of the entire chapter 220 framework was challenged here. *See Johnson v. Board of Education,* 604 F.2d 504 (7th Cir.1979), *vacated,* 457 U.S. 52, 102 S.Ct. 2223, 72 L.Ed.2d 668 (1982), *reinstated by, United States, supra,* 567 F.Supp. 290.

As discussed, the plaintiffs' description of the limited parameters of their claim convinces me that they do not intend to lodge such a sweeping attack in this case. Accordingly, I am persuaded that the level of scrutiny is not relevant here. What is relevant here is consideration of chapter 220 in its entirety.

> Approval of the Plan as a *whole* implicates rejection of the notion each and every element of the Plan must pass strict constitutional scrutiny in as vacuum, isolated from the other aspects of the Plan. That is because the whole really is more than the sum of its parts: The whole Plan desegregates the school system by techniques that individually classify by race and that individually (that is, if a particular technique were the only ingredient in the game plan) might be impermissible under the Constitution.

*United States, supra,* 567 F.Supp. at 296 (emphasis in the original).

Imposing a financial disincentive plan in an attempt to promote integration within the city public schools is not the same as independently imposing a cost to minority suburban students for city school education. The plaintiffs do not allege that the *system-wide* distribution of burdens disproportionately impacts on minority suburban pupils; the only challenge is to that portion of the overall plan that is intended to burden minority suburban students as a means of achieving chapter 220's ultimate objective of integration. However, viewing this provision as part of the whole plan, as I must, I am convinced that there is no equal protection violation.

The Willans acknowledge the existence of cases in which majority-to-minority transfer provisions implemented to promote school desegregation have been deemed to be consistent with the equal protection clause. *See, e.g., McDaniel, supra,* 402 U.S. 39, 91 S.Ct. 1287. They attempt to distinguish such authority by

asserting that "in none of those cases had the aggrieved pupils (be they minority or white) been told that they had to pay to attend any of a particular public school which children from the same community but of another race could attend free of charge." Plaintiffs' Brief at 11. I disagree that the financial aspect of chapter 220 is significant in this regard. Desegregation plans that prohibit certain students from attending certain schools on grounds of race have been judicially endorsed as consistent with the constitution. *See, e.g., Samayoa, supra,* 809 F.2d 1046; *United States v. South Bend Community School Corp.,* 511 F.Supp. 1352 (N.D.Ind.1981), *aff'd,* 692 F.2d 623 (7th Cir.1982). In light of these holdings, I conclude that the less drastic use of financial incentives to encourage integration, rather than require it, is consistent with the Constitution.

CONCLUSION

Jason Willan and his parents have not alleged any facts to persuade me that my fashioning of monetary, injunctive or declaratory relief would benefit them. Accordingly, I conclude that their claims for relief are moot. Even if some live controversy could be identified, dismissal would still be appropriate in this case; by challenging only an individual aspect of a valid and constitutionally viable plan for school integration, the plaintiffs have failed to state a claim upon which relief can be granted.

Therefore, IT IS ORDERED that the defendants' motion to dismiss be and hereby is granted.

IT IS ALSO ORDERED that this action be and hereby is dismissed.